[754 NYS2d 301]

ZOILA GODOY, Plaintiff, v ABAMASTER OF MIAMI, INC.,
Defendant-Appellant, and CARFEL, INC., Defendant-
Respondent, et al., Defendant. (And a Third-Party Action.)

Second Department, January 21, 2003

## APPEARANCES OF COUNSEL

*Lester Schwab Katz & Dwyer, LLP,* New York City (*Steven B. Prystowsky* and *Saul Wilensky* of counsel), for defendant-appellant.

*Diamond, Paino, Cardo, King, Peters & Fodera,* Brooklyn (*Deborah F. Peters* of counsel), for defendant-respondent.

## OPINION OF THE COURT

Townes, J.

In this products liability action, the issue, which appears to be one not previously presented to this Court, is whether the distributor of a defective product is entitled to indemnification from an importer/distributor of the product which is higher in the chain of distribution, where both are strictly liable in tort to the plaintiff.

The plaintiff commenced this action to recover damages for the loss of all four fingers on her right hand, an injury sustained while she was operating a manually fed, electrically-powered commercial meat grinder. The plaintiff commenced the instant action against the retailer that sold the meat grinder, Mike's Restaurant Equipment Corp. (hereinafter Mike's Restaurant Equipment), Abamaster of Miami, Inc. and Abamaster, Inc. (hereinafter collectively referred to as Abamaster), a wholesale distributor of restaurant equipment in Miami, Florida, that sold the meat grinder to Mike's Restaurant Equipment, and Carfel, Inc. (hereinafter Carfel), an importer/distributor, also based in Miami, that sold the meat grinder to Abamaster.

Abamaster and Carfel interposed separate answers denying the plaintiff's allegations and asserting affirmative defenses and cross claims against one another. Abamaster cross-claimed for contribution and indemnification, while Carfel sought only contribution from Abamaster. A default judgment on the issue of liability was entered against Mike's Restaurant Equipment. It is Abamaster's cross claim against Carfel for indemnification which is the subject of this appeal.

Carfel attempted to commence a third-party action against, inter alia, Aroma Taiwan Machinery Company (hereinafter

Aroma), the manufacturer of the meat grinder. Carfel was not able to obtain jurisdiction over the third-party defendants. Thus, the manufacturer is not a party to this action. Carfel settled with the plaintiff before trial for the sum of $350,000.

At a jury trial on the issue of liability, the plaintiff introduced the deposition testimony of Epifanio Capote, the president of Abamaster. Capote testified that Abamaster was a wholesale seller of restaurant equipment. Abamaster ordered the meat grinder from Carfel, and sold the meat grinder to Mike's Restaurant Equipment. Carfel directed that a metal plate showing Abamaster's name be affixed to the meat grinder at Abamaster's request. Called as a witness for Abamaster at trial, Capote testified that Abamaster had nothing to do with the manufacture or design of the meat grinder, that Abamaster received meat grinders from Carfel in sealed cartons, and that Abamaster shipped them to buyers in the same sealed cartons without having opened them.

Abamaster introduced the deposition testimony of Fannie Hanono, vice-president of Carfel. Hanono testified that Carfel had offices in Taiwan and that some of Carfel's products were manufactured there because of inexpensive production costs. Hanono further testified that Abamaster placed orders for meat grinders, including the one at issue, with Carfel's Miami office, which in turn placed orders with Carfel's Taiwan office. Carfel's Taiwan office then placed the orders with a vendor in Taiwan. Carfel did not design or manufacture the meat grinder. Instead, it was designed and manufactured by Aroma, a company with manufacturing facilities in Taiwan. Aroma regularly shipped meat grinders to Carfel in Miami via Carfel's Taiwan office. When they were received in Miami, the meat grinders were immediately shipped to Abamaster without being inspected or even removed from the cartons in which they were shipped.

At the close of the plaintiff's case, the defendant Carfel, which had previously settled with the plaintiff, made an application to dismiss Abamaster's cross claim for indemnification. The Supreme Court deferred decision on the application until the close of the proof and subsequently, until the verdict was rendered on the issue of liability.

The jury, which had been charged on strict products liability, found that the meat grinder in question was defective in design and that the defect was a substantial factor in causing the plaintiff's injury. The jury further found that the product was designed and/or manufactured by a Taiwanese company, that both Carfel and Abamaster were distributors of the product,

and that the design defect existed at the time the product left their respective hands. The jury apportioned fault in the happening of the accident as follows: 40% to the plaintiff, 50% to Abamaster, and 10% to Carfel.

After the verdict, Abamaster sought a determination of its cross claim for common-law indemnification against Carfel, and Carfel renewed its application to dismiss the cross claim. Carfel argued that the jury's assignment of 50% of the fault in the happening of the accident to Abamaster, and only 10% to it, reflected that the jury found Abamaster more culpable than Carfel, and that Carfel should not be compelled to indemnify the more culpable defendant. Abamaster argued, on the other hand, that the proof presented in the case allowed only one conclusion, that the product was designed and manufactured by a Taiwanese company not a party to this action and that both Carfel and Abamaster were mere sequential distributors who passed the product along the distribution chain without knowledge of the defect. The Supreme Court ruled that Abamaster was not entitled to indemnification because Abamaster and Carfel were found by the jury to be joint tortfeasors.

In strict products liability, a manufacturer, wholesaler, distributor, or retailer who sells a product in a defective condition is liable for injury which results from the use of the product "regardless of privity, foreseeability or the exercise of due care" (*Gebo v Black Clawson Co.,* 92 NY2d 387, 392; *see Sukljian v Charles Ross & Son Co.,* 69 NY2d 89, 94-95; *Nichols v Agway, Inc.,* 280 AD2d 889; *Bielicki v T.J. Bentey, Inc.,* 248 AD2d 657, 659-660; *Mead v Warner Pruyn Div., Finch Pruyn Sales,* 57 AD2d 340). The plaintiff need only prove that the product was defective as a result of either a manufacturing flaw, improper design, or a failure to provide adequate warnings regarding the use of the product (*see Sukljian v Charles Ross & Son Co., supra; Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 106-107; *Robinson v Reed-Prentice Div. of Package Mach. Co.,* 49 NY2d 471, 478-479), and that the defect was a substantial factor in bringing about the injury (*see Codling v Paglia,* 32 NY2d 330). Distributors and retailers may be held strictly liable to injured parties, even though they may be innocent conduits in the sale of the product, because liability rests not upon traditional considerations of fault and active negligence, but rather upon policy considerations which dictate that those in the best "position to exert pressure for the improved safety of products" bear the risk of loss resulting from the use of the products (*Sukljian v Charles Ross & Son Co., supra* at 95; *see Bielicki v T.J.*

*Bentey, Inc., supra*). Strict products liability is not vicarious liability, but like vicarious liability, it creates an exception to the usual rule which limits one's liability to one's own wrongdoing (*see Mondello v New York Blood Ctr.—Greater N.Y. Blood Program,* 80 NY2d 219, 226-227; *Rosado v Proctor & Schwartz,* 66 NY2d 21, 25).

Here, the jury was charged solely on strict products liability. The answers on the verdict sheet indicate that it found that the meat grinder was defectively designed and/or manufactured by Aroma, a nonparty, and that the defect was a substantial factor in bringing about the plaintiff's injury. As to Carfel and Abamaster, the jury expressly found that each was a distributor of the defectively-designed meat grinder. Indeed, the proof presented at trial did not support the conclusion that either defendant was anything more than an innocent conduit in the sale of the defective product. There was no proof to support a finding that either Carfel or Abamaster was actively negligent in designing the meat grinder, or that they committed any independent tort which caused or contributed to the plaintiff's injury.

Carfel and Abamaster stand in similar shoes vis-à-vis the plaintiff—they each moved the product through the stream of commerce without knowledge of the design defect which caused the plaintiff's injury. Neither committed a primary nor affirmative act of negligence, and Abamaster was no more or less active in moving the product toward retail sale than was Carfel. Under these circumstances, there was no basis for the Supreme Court to instruct the jury to apportion fault in the happening of the accident between Carfel and Abamaster. Instead, the Supreme Court should have determined the issue of Abamaster's entitlement to indemnification as a matter of law at the close of the proof. At that point in the trial, it was evident that the proof did not support the conclusion that either of these parties was more actively negligent than the other.

Here, both Carfel and Abamaster are liable to the plaintiff, not because they were negligent, but "only by imputation of law" (*Mas v Two Bridges Assoc.,* 75 NY2d 680, 689). Thus, "there is no rational way to apportion the damages between them" (*id.*). And, precisely because they are liable only by imputation of law, there is no right of contribution between them. Contribution is available where "two or more tortfeasors combine to cause an injury" and is determined "in accordance with the relative culpability of each such person" (23 NY Jur 2d, Contribution, Indemnity, and Subrogation § 24; *see* CPLR

1402). Where, as here, liability is not based upon culpability, the appropriate concept is indemnification, rather than contribution.

One who is liable for an injury "by imputation of law may seek common-law indemnity from a person primarily liable for the injury" (23 NY Jur 2d, Contribution, Indemnity, and Subrogation § 90; *see Bellevue S. Assoc. v HRH Constr. Corp.,* 78 NY2d 282; *Mas v Two Bridges Assoc., supra*). Where an entity "has discharged a duty which is owed by [it] but which as between [it] and another should have been discharged by the other" a contract to reimburse or indemnify is implied by law (*McDermott v City of New York,* 50 NY2d 211, 217, quoting Restatement of Restitution § 76). Thus, it is well settled that a seller or distributor of a defective product has an implied right of indemnification as against the manufacturer of the product (*see McDermott v City of New York, supra; Nutting v Ford Motor Co.,* 180 AD2d 122, 132; *Spector v K-Mart Corp.,* 99 AD2d 605; *Infante v Montgomery Ward & Co.,* 49 AD2d 72, 75; *Mead v Warner Pruyn Div., Finch Pruyn Sales, supra*). In the instant case, both Carfel and Abamaster have the benefit of the implied right of indemnification as against the manufacturer of the defectively-designed meat grinder. Unfortunately, the manufacturer is not amenable to the jurisdiction of the Supreme Court. In the absence of the manufacturer, we must determine whether, as Abamaster contends, the importer/distributor, Carfel, as the party closest to the negligent manufacturer, should indemnify the distributor lower in the commercial chain of distribution of the product.

Although we have not previously considered this question, the Supreme Court of New Jersey had occasion to address it in *Promaulayko v Johns Manville Sales Corp.* (116 NJ 505, 562 A2d 202). In *Promaulayko,* where the producer of the product causing the harm was located in the former Soviet Union and was not a party to the action, the issue on appeal was whether an intermediate distributor should indemnify the distributor below it in the chain of distribution where both were held strictly liable in tort to the injured plaintiff. The court held that it should, based upon the policy considerations underlying the concept of strict liability in tort (*see Promaulayko,* 116 NJ at 512-513, 562 A2d at 206). The policy considerations identified were those of allocation of the risk of loss to the party that was better able to control and distribute it (*Promaulayko,* 116 NJ at 513, 562 A2d at 206). The court stated that "the effect of requiring the party closest to the original producer to indemnify

parties farther down the chain is to shift the risk of loss to the most efficient accident avoider" and "[p]assing the cost of the risk up the distributive chain also fulfills, as a general rule, the goal of distributing the risk to the party best able to bear it" (*id.*). The court reasoned that the distributor at the top of the distribution chain can generally spread the risk among a greater number of customers than the smaller distributor at the lower end of the chain. Moreover, the distributor at the top of the chain is closer to the producer or manufacturer, and thus, is in a better position to pressure it to make the product safe (*Promaulayko*, 116 NJ at 515, 562 A2d at 207).

We find the reasoning in *Promaulayko v Johns Manville Sales Corp. (supra)* to be persuasive. In New York, strict products liability evolved as an exception to the usual rule limiting liability to one's own wrongdoing for policy reasons related to the allocation of the risk of loss and deterrence (*see Mondello v New York Blood Ctr.—Greater N.Y. Blood Program, supra* at 226-227). Manufacturers are in the best position to know when products are suitably designed and properly made (*see Sukljian v Charles Ross & Son Co., supra; Codling v Paglia, supra*), as well as to diffuse the cost of safety in design and production (see *Codling v Paglia, supra* at 341). The rule imposing strict liability upon retailers and distributors advances the policy of encouraging improved product safety because, by reason of their continuing relationships with manufacturers, sellers and distributors are in a position to exert pressure on them to produce safe products (*see Sukljian v Charles Ross & Son Co., supra; Nutting v Ford Motor Co., supra; Brumbaugh v CEJJ, Inc.,* 152 AD2d 69, 71; *Mead v Warner Pruyn Div., Finch Pruyn Sales, supra*). Of those in the chain of distribution, the distributor or importer closest to the manufacturer (at the top of the chain of distribution) is in the best position to further the public policy considerations underlying the doctrine of strict products liability. Here, the upstream distributor, Carfel, selected the Taiwanese manufacturer and dealt exclusively with it through Carfel's offices in Taiwan. Carfel is in a better position to exert pressure on the Taiwanese manufacturer to make a safer product and, thus, to eliminate the danger posed by the meat grinder at issue in this case. Carfel is also in a better position to seek indemnification from the Taiwanese manufacturer for the loss, thereby shifting the cost of the loss to the entity best able to distribute the cost to all users of the product. Thus, the Supreme Court should have granted judgment as a matter of law to Abamaster on its cross claim for indemnification.

The fact that Carfel negotiated a settlement with the plaintiff has no bearing upon the result. As the Court of Appeals stated in *McDermott v City of New York* (50 NY2d at 220, supra), a settlement by the party seeking indemnity "in itself would have no consequences upon the indemnity claim. Irrespective of the amount of the settlement, the indemnitor is either totally responsible or not." Likewise, settlement by the indemnitor, as in this case, should have no bearing upon the indemnitee's claim. Accordingly, the amount that Carfel will be required to pay Abamaster on the indemnification claim, which shall be determined by the Supreme Court after a trial on the issue of damages, in the event one has not been held, shall be reduced by the sum paid to the plaintiff pursuant to the settlement.

On the Court's own motion, the appellant's notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see* CPLR 5701 [c]).

Accordingly, the order is reversed, on the law, with costs, judgment is granted as a matter of law to the defendant Abamaster of Miami, Inc., on its cross claim for indemnification as against Carfel, Inc., and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith, including a trial on the issue of damages, in the event one has not been held, and a determination of the amount to be paid by the defendant Carfel, Inc., on the cross claim of the defendant Abamaster of Miami, Inc., for indemnification.

SANTUCCI, J.P., FLORIO and H. MILLER, JJ., concur.

Ordered that on the Court's own motion, the appellant's notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is reversed, on the law, with costs, judgment is granted as a matter of law to the defendant Abamaster of Miami, Inc., on its cross claim for indemnification as against Carfel, Inc., and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith, including a trial on the issue of damages, in the event one has not been held, and a determination of the amount to be paid by the defendant Carfel, Inc., on the cross claim of the defendant Abamaster of Miami, Inc., for indemnification.