OPINION OF THE COURT
Edward D. Garni, J.
Introduction and Factual Background
These two actions arise from an incident which occurred on June 20, 2000 at a two-family residence complex located at 113 East Borden Avenue in Syracuse, New York. The infant plaintiff, Eliza Leary, resided in the second floor unit with her mother, plaintiff Catrina Debold. The second floor residential unit was owned and leased to Ms. Debold by defendant Syracuse Model Neighborhood Corporation (hereinafter SMNC), a nonprofit housing agency operating within the City of Syracuse.
On June 20, 2000, Eliza Leary, then two years old, was injured when a frying pan containing cooking oil allegedly fell from the stove-top surface in the second floor unit at 113 East Borden Avenue, landed upon the back of Eliza’s neck and shoulder, and caused personal injuries.
*294 There is no dispute that the involved stove was a white Gibson gas range model No. MPE300PBWE, serial No. VF74301706. This stove was purchased new by SMNC from Charette Brothers. There is no factual dispute that on April 3, 1998 this stove was installed by Charette in an apartment at 131 East Colvin Street which was also owned by SMNC. Sometime subsequent to that original purchase and installation, and prior to the incident of June 20, 2000, the stove was removed from the 131 East Colvin Street location and reinstalled at the 113 East Borden location where the incident occurred.
There is no dispute that Charette did not install the stove in the 113 East Borden location and that it was reinstalled there by someone else at about the same time that Catrina Debold and her family moved into that unit.
On January 10, 2001, Catrina Debold, individually and as parent and guardian of Eliza Leary, an infant, commenced action No. 2001-0237 against defendant Syracuse Model Neighborhood Corporation by filing a summons and complaint. Catrina Debold, individually and as parent and guardian of Eliza Leary, an infant, thereafter commenced a separate action No. 2002-8732 against defendants Charette Brothers and Charette Brothers Refrigeration by filing a summons and complaint on December 30, 2002.
On October 2, 2003, defendant Syracuse Model Neighborhood Corporation, in action No. 2001-0237, commenced a third-party action against Charette Brothers, AB Electrolux, Electrolux Home Products of North America and Gibson.
On July 28, 2004, the third-party action was discontinued as to third-party defendants AB Electrolux, Electrolux Home Products of North America and Gibson by the filing of a stipulation discontinuing third-party action in the Onondaga County Clerk’s Office. SMNC remained the sole defendant in this action and the third-party action was continued by SMNC as against third-party defendant Charette.
Accordingly, Charette remains the sole defendant in action No. 2002-8732 and the only third-party defendant in action No. 2001-0237.[1]
Charette brings this motion for summary judgment pursuant to CPLR 3212 seeking an order dismissing plaintiffs complaint *295 against Charette in action No. 2002-8732 and an order dismiss-lug the third-party complaint of SMNC against Charette in action No. 2001-0237.[2]
Charette also moves for consolidation of the two actions pursuant to CPLR 602. There is no opposition to that portion of Charette’s motion and the court finds that consolidation of these actions is appropriate and this portion of Charette’s motion is granted.
There is no dispute that a device known as an “anti-tip” bracket was not installed with the stove when it was initially placed and located in the second floor residence at 131 East Colvin Street. An anti-tip bracket is a device which secures the rear portion of the stove to the floor and which prevents the stove from tipping over, such as when heavy objects are placed upon the oven door when it is in the open position.
Leo Charette testified that he knew of the existence of anti-tip devices “as soon as they came out” and since at least 1991 (Charette examination before trial transcript [EBT tr] at 23, 35, 121). Charette had the capability to install the anti-tip devices (id. at 138, 142) but did not because he did not know what type of flooring he would encounter in the SMNC apartments and “it was a big deal to install these anti-tips” (id. at 70).[3] Leo Charette testified that an anti-tip bracket or device did come with the range but Charette “did not put them on.” (Charette EBT tr at 47.) Further into his deposition, Leo Charette testified that it was the manufacturer’s (Gibson) practice to ship an anti-tip device with every new gas range, but he had no personal knowledge whether such a device came with this particular unit (id. at 85-86).[4] Mr. Charette also testified that the product instruction booklet would be put in with the anti-tip device from the manufacturer (id. at 47-48). Defendant Charette has not provided the court with a copy of the instruction booklet or owner’s manual. The first time that Charette undertook a practice to offer SMNC anti-tip bracket installations with new gas range purchases was after the commencement of this lawsuit (id. at 67). Prior to that time, Charette’s practice was to install *296 anti-tip devices on new ranges only if the customer asked for it (id. at 48).
The Pleadings
Plaintiffs’ complaint against SMNC sounds in negligence under a broadly pleaded premises liability theory. The complaint alleges that SMNC was negligent in “allowing, creating and/or permitting a dangerous, hazardous and/or unsafe condition to be, become and/or remain on said apartment complex premises.” (Plaintiffs’ complaint 1115.)
SMNC’s third-party complaint against Charette seeks indemnity and contribution from Charette Brothers and, within its third cause of action,[5] alleges as follows:
“13. The 30-inch gas range was unreasonably safe for its intended and reasonably foreseeable uses and misuses and thus defectively designed.
“14. The 30-inch gas range was not accompanied by adequate warnings of risks of personal injury and/or tipping.
“15. The 30-inch gas range was defectively manufactured.
“16. If the aforesaid incident occurred as alleged in plaintiff’s complaint, it was due solely to design defects, manufacture defects, and/or inadequate, warnings on the part of third-party defendant [Charette Brothers] without any negligence on the part of Syracuse Model Neighborhood.
“17. If the accident, injuries and damages alleged in the plaintiffs’ complaint were not caused by reason of the negligence and culpability of the plaintiff herself, it was the design defects, manufacture defects and/or inadequate warnings on the part of third-party defendant [Charette Brothers] that were the cause of or contributed to the accident, damages and injuries, in whole or in part, and defendant/ third-party plaintiff will be entitled to judgment over and contribution from the third-party defendant [Charette Brothers] based on the third-party defendant’s proportionate share of negligence and *297 liability.”
Accordingly, the third-party complaint advances negligence and products liability theories of liability, including strict products liability, against third-party defendant Charette.
Charette’s Motion for Summary Judgment
Charette’s original moving papers asserted one ground for dismissal of the third-party complaint, that being the undisputed fact that Charette did not install the stove in the apartment location (113 East Borden) where the incident of June 20, 2000 occurred. Other than relying upon the fact that Charette did not install the subject gas range at 113 East Borden, Charette’s moving papers do not address third-party defendant’s products liability theories.
Legal Analysis
When pursuing summary judgment, the movant bears the threshold burden of tendering evidentiary proof in admissible form demonstrating the absence of any material issue of fact and establishing entitlement to judgment as a matter of law. Once this showing has been made, the burden shifts to the non-moving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003]). Regardless of the sufficiency of the opposing papers, in the absence of admissible evidence sufficient to preclude any material issue of fact, summary judgment is unavailable (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993]; Finkelstein v Cornell Univ. Med. Coll., 269 AD2d 114, 117 [1st Dept 2000]).
Negligent Installation at 113 East Borden
Charette’s moving papers rely heavily and exclusively upon the undisputed fact that it did not install the gas range at the 113 East Borden location. According to Charette, this simple fact and analysis entitles Charette to dismissal of third-party plaintiffs entire complaint.
Upon a careful review of the third-party complaint, however, this court does not find that the third-party complaint advances a theory of liability against Charette on a negligent installation at 113 East Borden basis. SMNC has not taken the position that Charette negligently installed the gas range at 113 East Borden. Nonetheless, to the extent that Charette believes that *298 SMNC’s third-party complaint advances a claim that Charette negligently performed the actual installation of the unit at 113 East Borden, such a theory has no factual basis and is dismissed in its entirety.
However, the legal theories advanced by SMNC in the third-party complaint transcend any factual relationship to the actual physical installation at 113 East Borden. In this court’s view, the legal theories advanced in the third-party complaint are sophisticated, complex and require analysis that delves much deeper into the realm of products liability.
In reviewing the third-party complaint, this court finds that it advances a number of legal theories which Charette completely failed to address in its initial summary judgment motion papers and which are not dependent in any manner upon Charette being the entity or person that actually installed the unit at 113 East Borden.
Strict Products Liability
There is no factual dispute that Charette Brothers was a distributor or retailer of appliances, including gas ranges, at the time it sold this particular stove to SMNC.[6]
In strict products liability, a manufacturer, wholesaler, distributor, or retailer who sells a product in a defective condition is liable for injury which results from the use of the product “regardless of privity, foreseeability or the exercise of due care” (Godoy v Abamaster of Miami, 302 AD2d 57, 60 [2d Dept 2003], quoting Gebo v Black Clawson Co., 92 NY2d 387, 392 [1998]).[7] The plaintiff need only prove that the product was defective as a result of either a manufacturing flaw, improper design, or a failure to provide adequate warnings regarding the use of the product (Godoy, supra at 60, citing Sukljian v Ross & Son Co., 69 NY2d 89, 94-95 [1986]) and that the defect was a substantial factor in bringing about the injury (Godoy, supra).
*299 Distributors and retailers may be held strictly liable to injured parties, even though they may be innocent conduits in the sale of the product, because liability rests not upon traditional considerations of fault and active negligence, but rather upon policy considerations which dictate that those in the best “ ‘position to exert pressure for the improved safety of products’ bear the risk of loss resulting from the use of the products” (id., quoting Sukljian, supra at 95). It is well settled that strict products liability extends to retailers and distributors in the chain of distribution even if they “never inspected, controlled, installed or serviced the product” (Perillo v Pleasant View Assoc., 292 AD2d 773, 774 [4th Dept 2002], quoting 86 NY Jur 2d, Products Liability § 108).
A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition (see, Voss v Black & Decker Mfg. Co., 59 NY2d 102 [1983]).
To establish a prima facie case of strict products liability alleging a design defect, the plaintiff must show that the manufacturer or retailer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and the defective design was a substantial factor in causing the plaintiffs injury (see, Merritt v Raven Co., 271 AD2d 859, 860 [3d Dept 2000], citing Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107 [1983]). This requires an assessment of whether, “if the design defect were known at the time of manufacture, a reasonable person would conclude that the ultimate utility of the product did not outweigh the risk inherent in marketing a product designed in that manner” (Merritt v Raven Co., 271 AD2d at 860, quoting Pigliavento v Tyler Equip. Corp., 248 AD2d 840, 841 [1998], lv dismissed and denied 92 NY2d 868 [1998], quoting Denny v Ford Motor Co., 87 NY2d 248, 257 [1995]).[8]
The inadequacy of a warning may form the basis of a strict products liability cause of action (Frederick v Niagara Mach. & Tool Works, 107 AD2d 1063, 1064 [4th Dept 1985]).
*300 Charette, in order to make out a prima facie case entitling it to dismissal of third-party plaintiff’s strict products liability theory, would have to demonstrate that the gas range, when placed into the stream of commerce, was a reasonably safe product—that is, one whose utility outweighs its risks when the product was designed so that the risks are reduced to the greatest extent possible while retaining the product’s inherent usefulness at an acceptable cost (see, Voss v Black & Decker, 59 NY2d at 108).
Here, Charette, relying solely upon the fact that it did not install the unit at 113 East Borden, has not attempted to establish that the gas range as sold to SMNC was “reasonably safe.” Charette has not addressed this theory of third-party liability in any fashion. Charette has not submitted a prima facie defense to recovery against it on the basis of strict products liability that would entitle it to summary judgment (see, Denkensohn v Davenport, 144 AD2d 58, 63 [3d Dept 1989]; 2C [part 2] Warren, Negligence in New York Courts § 1.02, at 950 [3d ed] [“Products Liability”]). Accordingly, the court must deny Charette’s motion for summary judgment to the extent that it seeks dismissal of SMNC’s strict products liability theory of liability against Charette. This is so regardless of the sufficiency of SMNC’s opposition papers (Padula v Big V Supermarkets, 173 AD2d 1094 [3d Dept 1991]). Charette has simply not met its burden of proof on this issue and the burden was never shifted to SMNC.
Charette’s Negligence and Negligent Failure to Warn
There is little difference between a failure to warn cause of action sounding in negligence and one sounding in strict products liability (Frederick v Niagara Mach. & Tool Works, 107 AD2d at 1064 [4th Dept 1985]). “The adequacy of the warning in a products liability case based on a failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial” (id., quoting Cooley v Carter-Wallace Inc., 102 AD2d 642, 648 [1984]). The nature of the warning and to whom it should be given depend upon a number of factors including the harm that may result from use of the product without the warning, the reliability and adverse interest of the person to whom the notice is given, the kind of product involved, and the burden of disseminating the warning (Frederick v Niagara Mach. & Tool, 107 AD2d at 1064, citing Cover v Cohen, 61 NY2d 261, 276 [1984]).
*301 Where a manufacturer or seller learns that a product is dangerous only after its sale or delivery, it may still be liable for failure to give adequate warning (Cover v Cohen, 61 NY2d 261 [1984]). The existence and scope of such a duty are generally fact specific (Liriano v Hobart Corp., 92 NY2d 232, 240 [1998]).[9] Here, there is no dispute that, prior to June 2000, Charette did not have any discussion with SMNC about installing anti-tip devices on stoves that were already installed at SMNC units and in a used condition (Charette EBT tr at 72).[10]
Here, there is no dispute that there are warnings on the gas range concerning the possibility of tipping and the potential for personal injury if the “anti-tip device packed with range” is not installed. These warnings were obviously not sufficient however to motivate Charette to install the anti-tip device when the range was first installed at the 131 East Colvin Street location on behalf of SMNC. Photographs of the warning labels were provided by Charette. There are two different warning labels regarding the tipping hazard. One color photograph shows a more limited warning and it is not clear at all from the photo or Charette’s submissions where this label is located upon the unit. The other photograph shows a more extensive warning and it appears, although it is not clear, that the label is located on the back of the unit.* [11]
What is entirely lacking from Charette’s submissions is any analysis or evidence on the question of the adequacy of the warning labels. There is no evidence or discussion concerning the size of the label’s type, the color, the location of the label on the product and the warning’s ability to adequately apprise the user or installer of the dangers of using the product without the *302 anti-tip safety device. The intensity and prominence of the warning label are issues which go to the adequacy and effectiveness of a warning label (Johnson v Johnson Chem. Co., 183 AD2d 64, 70 [2d Dept 1992]).
Additionally, because Charette failed to assemble the gas range with the anti-tip safety device when the product was first sold, delivered, installed and placed in the stream of commerce, any subsequent user would encounter a product which arguably had a post-manufacture modification. The question then becomes whether the warnings on the product, in the absence of the device to which the warnings refer and which are needed for compliance with the warnings, were alone adequate to apprise the end-user of the danger associated with using the product without the anti-tipping device. In other words, did Charette’s placement of the product in the stream of commerce without the anti-tip device installed create an appearance or impression that the product was reasonably safe without the device. Although Charette moved for summary judgment seeking dismissal of the third-party complaint in its entirety, Charette did not offer any admissible evidence or analysis on the issue of all of the various factors that go to the adequacy of the warnings on the product so as to shift the burden to SMNC to raise a material question of fact.
More significantly, this case presents an unusual fact pattern vis-a-vis the removal of or failure to utilize the manufacturer’s supplied safety device. The typical case of this nature involves the removal or nonuse of the device by the plaintiff or a third party (i.e., employer) with injuries resulting therefrom (see, e.g., Vergara v Scripps Howard, 261 AD2d 302, 305 [1st Dept 1999] [testimony at trial established that the original metal mesh safety guard was welded onto the machine and required substantial effort to remove]; Moore v Deere & Co., 195 AD2d 1044, 1045 [4th Dept 1993] [plaintiffs employer removed power takeoff driveline safety cover into which plaintiff’s arm was drawn]).
O’Bara v Piekos (161 AD2d 1118 [4th Dept 1990]) presents a situation reasonably analogous to the instant situation. In O’Bara, the plaintiff was injured by a chain saw that kicked back and the blade of the saw cut his leg. The saw had been manufactured and sold to the defendant retailer in parts. The defendant retailer assembled the saw and then sold it to plaintiff’s employer. The saw was designed to be sold with a standard part called a chain brake. The chain brake, a key safety *303 feature, is activated by a handle which is attached to the machine by two bolts. Its purpose is to automatically stop the movement of the chain when the saw kicks back during operation. The chain brake had been removed from the saw prior to the time of plaintiff’s accident. Plaintiff defeated defendant retailer’s motion for summary judgment by raising an issue of fact, inter alla, as to whether the retailer had sold the saw without the chain brake.
In denying the retailer’s motion for summary judgment seeking dismissal of plaintiff’s negligence and strict products liability claims, the Fourth Department in O’Bara stated:
“[Pllaintiff has submitted evidence sufficient to support an inference that the defendants sold the saw without the chain brake. Moreover, the plaintiff established that the defendants removed chain brakes from other saws at the request of third-party defendant [plaintiffs employer]; that the purpose of removal of the chain brake was to increase the saw’s productivity; and that the removal of the chain brake was a condition of the sale. Finally, the plaintiff has denied knowing who removed the brake. Thus, it is for a jury to decide whether the chain brake was attached to the saw at the time of its sale, and if it was, whether the saw was purposefully manufactured and assembled to permit its use without a chain brake, the scope of such use, and whether the product was reasonably safe when sold. In addition, it is for the jury to determine the question whether the removal of the chain brake worked a substantial change in the saw’s condition and was a proximate cause of the plaintiff’s injuries.” (O’Bara, 161 AD2d at 1120.)
Here, there is no factual dispute that Charette, the retailer and original installer, knew of the existence and purpose of an anti-tip device well in advance of the initial installation at 131 East Colvin Street (Charette EBT tr at 23). Nonetheless, Charette failed to assemble and install the gas range with the anti-tip bracket in the first instance. Ordinarily, it is a third party other than the retailer or manufacturer that makes material alterations which work to produce a substantial change in the condition in which the product was sold (see, McGregor v Flexcon Co., 275 AD2d 1001 [4th Dept 2000] [substantial modification of product in removing guard destroyed key safety feature in laminating machine]). In this case, there is no dispute *304 that the product was manufactured and shipped with an anti-tip device but that safety device was never installed by Charette when originally placed in the stream of commerce.[12]
The court is mindful that Charette argues that an anti-tip device “would have been provided” at the time of installation (see, Viviani supplemental mem of law at 2). In support of this position, Charette relies upon Leo Charette’s EBT testimony at pages 48 and 134. The court has carefully reviewed this testimony and finds that, when read in isolation or in the context of the entire transcript, this testimony is confusing and inconclusive on the issue of what happened to the anti-tip device that was packed and shipped by the manufacturer with this unit and installed by Charette on April 3, 1998 without the anti-tip device.
Even assuming that Charette left the anti-tip device on the kitchen counter or inside the stove, Charette has completely failed to address the issues of whether the stove was reasonably safe when placed in the stream of commerce; whether the warnings on the product were adequate to apprise consumers in the stream of commerce; and whether so “providing” the anti-tip device satisfied Charette’s duty of reasonable care as a retailer selling and installing this product. In other words, Charette never shifted the burden to SMNC to raise issues of fact to defeat Charette’s motion for summary judgment seeking dismissal of the third-party complaint.[13]
*305 Lastly, this court finds little distinction, in terms of Charette’s liability, between the location of the gas range at 131 East Colvin Street and its subsequent installation at 113 East Borden Avenue. By the time the gas range was relocated from its original location, the retailer, Charette, had already installed the product without a key safety device designed into the product and supplied by the manufacturer. Arguably, this rendered the product not reasonably safe at the 131 East Colvin location and any subsequent location. Contrary to defendant Charette’s position, this case is not about the geographic location of the product or the accident. Instead, the focus of this case is on the safety, or lack thereof, of the product when it was placed into the stream of commerce by Charette and Charette’s conduct in placing the product in the stream of commerce without installing a key safety feature.
Conclusion
Because plaintiff has not submitted any opposition to Charette’s motion for summary judgment seeking dismissal of plaintiffs complaint in action No. 2002-8732, Charette’s motion directed at this pleading is granted.
Insofar as Charette’s motion concerns SMNC’s third-party complaint in action No. 2001-0237, however, defendant Charette has failed to address any of the foregoing issues and has not met its burden of proof nor shifted the burden of proof to third-party plaintiff SMNC to raise a triable issue of fact on any of the liability theories advanced in the third-party complaint. Accordingly, for all the foregoing reasons, Charette’s motion for summary judgment is denied except to the extent that SMNC’s third-party complaint could be construed as advancing a claim for negligent installation at the 113 East Borden location.

. Charette’s moving papers do not draw any distinction between the identity of Charette Brothers in action No. 2001-0237 and Charette Brothers Refrigeration in action No. 2002-8732. Accordingly, the court has treated the two named entities as unified for purposes of these motions.

. Plaintiff has not submitted any opposition to Charette’s motion for summary judgment in action No. 2002-8732.

. Leo Charette testified that it was not until after the commencement of this lawsuit that Charette Brothers began a practice of having buyers sign off or authorize the installation of the anti-tip device (see, Charette EBT tr at 11).

. The court notes that the photograph of the gas range provided to the court by Charette contains a warning label which states: “INSTALL ANTI-TIP DEVICE PACKED WITH RANGE.” (Emphasis supplied.)

. The third cause of action “repeats and re-alleges” all of the allegations in paragraphs 1 through 17 of the third-party complaint as if fully set forth. These paragraphs also collectively constitute the first and second causes of action against the other third-party defendants and the first cause of action against Charette.

. Leo R Charette, partner, owner and president of Charette Brothers, testified at his deposition as follows:
“We’re an appliance company and also a moving company . . .
“We sell product, new and used. We sell wholesale to apartment complexes. We sell retail to the public. We do a complete delivery to apartment complexes in the wholesale type. We do complete delivery to the retail sale, we install product and we also have service repairmen that maintain full warranty on the product and also out of warranty service.” (Charette EBT tr at 5-6.)

. In Godoy, the defendant Abamaster of Miami was a wholesale distributor of restaurant equipment which had sold the meat grinder which injured plaintiff.

. Strict liability for a design defect differs from a cause of action for a negligently designed product in that the plaintiff is not required to prove that the manufacturer or distributor acted unreasonably in designing the product. Under a strict products liability theory, the focus shifts from the conduct of the manufacturer or distributor to whether the product, as designed, was not reasonably safe (see, Voss v Black & Decker, 59 NY2d 102, 107 [1983]).

. The Court of Appeals has noted that the integration of a safety device into the final product is often the most effective way to communicate that operation of the product without the device is hazardous (Liriano v Hobart, 92 NY2d at 241). Here, the product as manufactured and marketed had an available safety device (anti-tip bracket) which Charette did not install with the product in the first instance.

. In other words, Charette made no subsequent attempt to correct, advise or warn SMNC of the danger presented by a gas range Charette had previously installed without an anti-tip device. This would include the gas range sold to SMNC and installed by Charette on April 3, 1998.

. One of the photographs submitted indicates that the warning label is on the “back of unit.” However, this is a photograph of a portion of the back of the unit and it is not possible to discern precisely where the warning is located and its size in relation to the back of the unit. Because the photo submitted is “black and white,” it is impossible to analyze important variables that play a role in the effectiveness of a warning label such as color or contrast.

. This situation is different from where the retailer limits the transaction to sale and delivery and the consumer undertakes the obligation to conduct the final assembly of the product and install safety features. In this situation, assuming there are no manufacturing or design defects, the retailer’s obligation vis-a-vis the anti-tip device would be, inter alla, to insure that the device was delivered with the product and that the product had adequately placed and sufficiently prominent warnings regarding the use and installation of the safety device. However, where the retailer undertakes the obligation to perform the delivery, final assembly and installation, the retailer has the duty of insuring that the product is reasonably safe for those who encounter it in the stream of commerce. That arguably includes the obligation to place the product in the stream of commerce in a fully assembled state equipped with manufacturer designed and supplied safety features.

. Charette has not attempted to establish that its conduct in placing the product in the stream of commerce without the anti-tip device was in conformance with any industry standard or practice. Charette has not attempted to establish that the stove design was reasonably safe without the installation of the anti-tip bracket. Charette has not argued or attempted to prove that its conduct satisfied its burden of acting as a reasonably prudent seller in placing this product in the stream of commerce without the anti-tip device thereby *305 shifting the burden of proof to SMNC to raise a question of fact on the issue of Charette’s breach of duty under a negligence theory.