ALLERGAN FINANCE, LLC, Plaintiff,

against
PFIZER INC., KING PHARMACEUTICALS, INC. , Defendants.


Index No. 651237/2019

For Plaintiff, Latham & Watkins, 885 Third Avenue, NY NY 10022, 212-906-1200
For Defendants, Simpson Thacher & Bartlett LLP, 500 Fifth Avenue, NY NY 10110, 212-382-3300


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 8, 9, 10, 11, 12, 13 were read on this motion to/for DISMISS
Upon the foregoing documents, defendants' motion to dismiss pursuant to CPLR §§ 3211(a)(1), (a)(2) and (a)(7) is granted with respect to the equitable indemnification (the 4th cause of action) only, with leave to replead as set forth herein and is otherwise denied. 
RELEVANT FACTS AND CIRCUMSTANCES
This is an action for indemnification and related claims arising out of an Asset Purchase Agreement (the APA), dated December 17, 2008 by and between Actavis Elizabeth, LLC (Actavis) and King Pharmaceuticals, Inc. n/k/a King Pharmaceuticals LLC (King) pursuant to which Actavis acquired from King the prescription opioid Kadian® (Compl., ¶ 1, NYSCEF Doc. No. 1; Compl., Ex. A, NYSCEF Doc. No. 2). Allergan Finance, LLC (Allergan) is the successor to Actavis's rights and obligations under the APA and Pfizer, Inc. (Pfizer, and together with King, collectively, the Defendants)) is the successor to King's obligations (Compl., ¶¶ 2-3).
Pursuant to Section 12.02(a) of the APA, King agreed to indemnify Actavis and its successors, for, among other things, "the use by [King] or its Affiliates of the [Kadian®] Marketing Materials prior to the [December 2008] Closing" and for any third party claims "incurred in [*2]connection with, arising out of, or resulting from the ownership and operation of the Purchased Assets [including Kadian®] or the conduct of the Business prior to the [December 2008] Closing" (Compl., ¶ 4).
Further, pursuant to Section 12.02(e) of the APA, King agreed to reimburse Actavis "on a quarterly basis" for the "reasonable and verifiable costs and expenses, including fees and disbursements of counsel" incurred "in connection with any claim," with a right of refund in the event that King is found not to be obligated to indemnify Actavis (Compl., ¶ 5).
Allergan has been named in over one thousand lawsuits (the Opioid Lawsuits) brought by more than one thousand plaintiffs, including state attorneys general, cities, counties, hospitals, third-party payors, Native American tribes, and individuals, against manufacturers of prescription opioids alleging that these manufacturers, including Allergan when selling Kadian®, engaged in deceptive marketing practices that caused a nationwide opioid addiction crisis (id., ¶¶ 6-7). According to the Complaint, more lawsuits naming Allergan are filed every week (id., ¶ 7).
The primary basis for the allegations against Allergan in the various Opioid Lawsuits is the allegedly improper marketing and sale of Kadian®, including in the months and years before Actavis acquired Kadian® in December 2008 (id., ¶ 9). However, the Defendants have rejected any obligation to indemnify Allergan and have not reimbursed Allergan for any of its defense costs, denying that these Opioid Lawsuits involve any pre-2009 conduct.
Allergan previously filed its claims as a third-party complaint against the Defendants in an on-going multi-district litigation in which Allergan has been sued in connection with its marketing of Kadian® (In re: Natl. Prescription Opiate Litig., No. 1:17-MD-2804, ECF No. 1201, at *1 [ND OH December 17, 2018]). However, because the APA contains a forum selection clause requiring that "all actions or proceedings arising in connection with this Agreement shall" be filed in New York (APA, § 14.10), the Ohio court granted Pfizer and King's motion to dismiss based on improper venue (In re: Natl. Prescription Opiate Litig., No. 1:17-MD-2804, ECF No. 1201, at * 4). 
On February 28, 2019, Allergan filed its Complaint in this action (NYSCEF Doc. No. 1). The Complaint asserts five causes of action for: (1) breach of contract, (2) contractual indemnification, (3) declaratory judgment (i.e., that Allergan is entitled to indemnification and reimbursement), (4) equitable indemnification, and (5) contribution.
Pfizer argues that Allergan's Complaint is premature because Allergan has not yet been liable for any pre- or post-closing conduct and it is entirely speculative whether Allergan ever will be held liable and, if so, what the basis of that liability would be. At this point, all Allergan has paid in connection with the Opioid Lawsuits are the costs and legal fees for its defense (Compl., ¶ 54).
Allergan has periodically and timely demanded reimbursement of these defense costs and expenses from Pfizer, which as discussed infra include claims based on Pre-Closing Conduct (hereinafter defined), in compliance with Section 12.02(c) of the APA (Compl.,¶¶ 40-42). The Defendants, however, have disclaimed coverage and refused to reimburse Allergan for its costs [*3]and expenses (Compl., ¶ 49). The Defendants argue that because Section 12.02(e) of the APA refers to reimbursement of an "Indemnified Party," Allergan is not entitled to its costs and expenses unless and until it is "adjudicated in the underlying opioid cases" that Allergan is liable for pre-closing conduct (Def. Supp. Memo., pp.11-12). 
DISCUSSION
I. Applicable standard
On a motion to dismiss pursuant to CPLR § 3211, the court must afford the pleading a liberal construction and accept the facts alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference and determine only if the facts as alleged fit into any cognizable legal theory (Leon v Martinez, 84 NY2d 83 [1994]). Under CPLR§ 3211(a)(1), dismissal is only warranted if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law (id.). Under CPLR § 3211(a)(2), dismissal is mandatory where the court lacks subject matter jurisdiction. Subject matter jurisdiction refers to the court's fundamental "power of adjudication" and "should not be used to mean merely that the elements of a cause of action are absent" (Manhattan Telecom. Corp. v H & A Locksmith Co., 21 NY3d 200 [2013] [internal quotation omitted]). Finally, under CPLR § 3211(a)(7), the court must only assess whether the plaintiff has a cause of action and not whether the plaintiff has stated one.
II. The Claims for Reimbursement of Defense Costs (Breach of Contract, Contractual Indemnification and Declaratory Judgment) are Ripe
It is axiomatic that the right to contractual indemnification depends on the specific language of the contract at issue (Roldan v New York Univ., 81 AD3d 625, 628 [2d Dept 2011]). Outside of the insurance context, where the duty to defend is exceedingly broad and distinct from the duty to indemnify, contractual defense obligations are generally treated like any other contractual provision (see Viacom Inc. v Philips Electronics N. Am. Corp., 16 AD3d 215 [1st Dept 2005]; Mercolla v Manmall, LLC, 2008 WL 4699066 [Sup Ct NY Cnty October 14, 2008] ["Although, as often proclaimed, the duty to defend is broader than the duty to indemnify, this rule is generally applicable [only] to insurers"). 
Under the well-settled rules of contract interpretation, courts must construe contracts so as to give full meaning and effect to all their material provisions (Beal Sav. Bank v Sommer, 8 NY3d 318, 323 [2007]). A contract should not be construed so as to render any portion of it meaningless (id.). In addition, a contract should be read as a whole and, whenever possible, interpreted to give effect to its general purpose (id., citing Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003]).
Section 12.02 of the APA addresses defense and indemnification, and per its terms, provides for both defense and indemnification:
Subject to Section 12.03, from and after the Closing, Seller shall indemnify, reimburse, defend and hold harmless Buyer, its Affiliates, and their respective officers, directors, employees, agents, successors and assigns (the "Buyer Indemnified Parties") from and against any and all costs, losses, Liabilities, damages, lawsuits, deficiencies, claims, fines, demands, penalties, interest and expenses (including reasonable fees and disbursements of attorneys) (collectively, the "Damages"), incurred in connection with, [*4]arising out of, or resulting from (i) any breach of any covenant or agreement of Seller herein, (ii) the inaccuracy or breach of any representation or warranty made by Seller in this Agreement, (iii) the failure of Seller to assume, pay, perform and discharge any Excluded Liabilities, (iv) the ownership and operation of the Purchased Assets or the conduct of the Business prior to the Closing, (v) the use by Seller or its Affiliates of the Marketing Materials prior to the Closing, (vi) Third Party Claims in connection with, arising out of, or resulting from the use of the Regulatory Approval and other Regulatory Documentation in the Embeda NDA and Books and Records, including any Damages associated with the promotion, marketing, distribution, sale or use of any products associated with the use of the Regulatory Approval and other Regulatory Documentation in the Embeda NDA, and Books and Records pursuant to Section 8.10(i) and (vii) the enforcement by the Buyer Indemnified Parties of their rights under this Section 12.02(a).
(NYSCEF Doc. No. 2, §12.02 [emphasis added]). 
Significantly, under Section 12.02(e), Pfizer and King are contractually obligated to reimburse Allergan on a quarterly basis for costs and expenses that Allergan has incurred and continues to incur in defending the Opioid Lawsuits:

Expenses. Except as provided above, the reasonable and verifiable costs and expenses, including fees and disbursements of counsel, incurred by the Indemnified Party in connection with any claim shall be reimbursed on a quarterly basis by the Indemnifying Party, without prejudice to the Indemnifying Party's right to indemnification and subject to refund in the event the Indemnifying Party is ultimately held not to be obligated to indemnify the Indemnified Party.
(Compl., Ex. A, APA, § 12.02[e]; NYSCEF Doc. No. 2, § 12.02[e]). 
Section 12.02 (d)(i), entitled Third Party Claims, gives the "Indemnifying Party [i.e., Pfizer]" the right to "assume the defense of any Third Party Claim by giving written notice the Indemnified Party" as set forth in that Section (id., §12.02[d][i]). Section 12.02(d)(i) further states:
Should the Indemnifying Party assume the defense of a Third Party Claim, the Indemnifying Party shall not be liable to the Indemnified Party for any legal expenses subsequently incurred by such Indemnified Party in connection with the analysis, defense or settlement of the Third Party Claim. In the event that it is ultimately determined that the Indemnifying Party is not obligated to indemnify, defend or hold harmless an Indemnified Party from and against the Third Party Claim, the Indemnified Party shall reimburse the Indemnifying Party for any and all costs and expenses (including reasonable attorneys' fees and costs of suit) and any Damages incurred by the Indemnifying Party in its defense of the Third Party Claim with respect to such Indemnified Party.
The Indemnified Party is defined in the APA as "[t]he Person entitled to indemnification under this Agreement" (id., §12.02 [c], §1.01[vv]). 
Contrary to the Defendants' suggestion that the Opioid Lawsuits do not concern pre-2008 [*5]conduct (the Pre-Closing Conduct), the Complaint alleges that the Opioid Lawsuits allege that Allergan engaged in deceptive marketing techniques as far back as the 1990s, including through the circulation of Kadian® patient brochures starting in 2003, publications in medical journals regarding Kadian® in or about 2005, and through representations made by sales representatives concerning Kadian® between 2006 and 2008 (Compl., ¶ 38). Allergan maintains that it and its predecessors did not and could not have committed any of these actions because Actavis did not acquire Kadian® from King until December of 2008 (Compl., ¶ 35). Sales and marketing of Kadian® prior to December 2008 was conducted by Pfizer, King and its predecessors and the APA makes clear that they "remain solely responsible for" such Pre-Closing Conduct (APA, § 3.02; Compl., ¶¶ 25-26, 28).
In disclaiming coverage and now moving to dismiss, Pfizer's limited reading of the APA (i.e., that because Section 12.02[e] refers to reimbursement of an "Indemnified Party," Allergan is not entitled to its costs and expenses unless and until it is "adjudicated in the underlying opioid cases" that Allergan is liable for pre-closing conduct [Def. Supp. Memo., pp.11-12]), is plainly at odds with the other provisions of that contract. To wit, as noted above, the term "Indemnified Party" is defined in Section 12.02(c), Procedures, which states in relevant part:
The Person entitled to indemnification under this Agreement (the "Indemnified Party"), shall give the indemnifying Party (the "Indemnifying Party") prompt written notice (an "Indemnification Claim Notice") of any Damages or discovery of fact upon which such Indemnified Party intends to base a request for indemnification under Section 12.02(a) or Section 12.02(b), provided, however, that any failure to give such notice shall not waive any rights of an Indemnified Party except to the extent that the rights of the Indemnifying Party are actually prejudiced or to the extent that any applicable period contemplated by Section 12.01 has expired without notice being given.
Notably, the provision does not require an adverse determination as a precondition to the right to receive indemnification. And, significantly, Section 12.02(e) entitles Allergan to receive reimbursement on a quarterly basis — i.e., now— and, provides that defendants may obtain a refund "in the event" that the Defendants are "ultimately held not to be obligated to indemnify" Allergan (12.02[e]). The provision simply makes no sense if the Defendants are not obligated to provide defense costs until liability is adjudicated. To interpret the APA as narrowly as the Defendants urge would render all of these heavily negotiated and carefully constructed provisions superfluous and read them out of the APA. Put another way, Section 12.02(e) contemplates this exact situation where there is a dispute as to whether indemnification will ultimately be required and provides for reimbursement of costs and expenses on a quarterly basis in the interim, with the possibility of a refund at a future time.
The same is true for other provisions of the APA, such as Section 12.02(d)(i), which allows Pfizer to "assume the defense of any Third Party Claim," and which would also be rendered superfluous by the Defendants' narrow reading of the term "Indemnified Party."
Inasmuch as the Defendants cite Dresser-Rand Co. v Ingersoll Rand Co. (2015 WL 4254033 [SD NY July 14, 2015]), in support of their ripeness argument, their reliance is misplaced. 
In Dresser-Rand, a fire broke out in a Canadian nitrogen fertilizer plant and the owner of the plant brought suit against both the Dresser-Rand plaintiffs and the Dresser-Rand defendants in the Court of Queen's Bench for Saskatchewan, Canada to recover damages for property and business interruption losses, alleging that these parties either manufactured or serviced the piece of equipment that caused the fire (the Canadian Action). While the Canadian Action was pending, one of the defendants in the Canadian Action, the Dresser-Rand Company (DRC) commenced suit against another of the defendants, the Ingersoll Rand Company (IRC), seeking, among other things, a declaration under the Declaratory Judgment Act (28 USC § 2201) that IRC was required to defend and indemnify DRC in the Canadian Action. IRC moved to dismiss on the ground that the complaint was premature and not ripe for adjudication while the issues of liability remain undecided in the Canadian Action. While IRC's motion to dismiss was pending, IRC and DRC also filed cross-claims against each other in the Canadian Action alleging that each must indemnify the other for any liability in the Canadian Action. The Dresser-Rand court granted IRC's motion and dismissed the action as premature. 
Significantly, the Dresser-Rand court's ripeness analysis was pursuant to the federal Declaratory Judgment Act, which is not applicable here. In that case, the court noted that although the Declaratory Judgment Act incorporates the traditional ripeness requirements of Article III of the United States Constitution, it is not enough that "a case presents an active controversy" as the Second Circuit also requires that courts determine (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved, (ii) whether it would resolve or finalize the controversy involved, and "(iii) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata, (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court, and (v) whether there is a better or more effective remedy" (id. at *6, citing Dow Jones & Co. v Harrods, Ltd., 346 F3d 359 [2d Cir 2003]). These concerns, which were all present in Dresser-Rand, a case involving a pending action in a foreign court where the plaintiff and defendant each already cross-claimed against the other for indemnification in the foreign court, are simply not present here. Nor do New York state courts follow the Second Circuit's approach to ripeness for declaratory judgment claims. As the First Department has explained, "Courts in this state have followed the rule in declaratory judgment action that on a motion to dismiss the complaint for failure to state a cause of action, the only question is whether a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment, and not whether the plaintiff is entitled to a declaration favorable to him" (Law Research Serv., Inc. v Honeywell, Inc., 31 AD2d 900 [1st Dept 1969] [emphasis added]). Where a proper case for a declaration is set out, the merit of the claim is not a relevant factor and New York courts must permit the action to proceed to discovery, trial and judgment (id.).
Dresser-Rand also analyzed a different contract from the one here. While some of the contract provisions in Dresser-Rand were similar to the APA's here, significantly, in the Dresser-Rand contract, there was no provision for a refund of advanced defense costs to the Indemnifying Party in the event that indemnification is ultimately not found to be required. Thus, the court's conclusion that the issue of whether IRC was required to defend DRC in the Canadian Action depended on "contingent future events that may not occur as anticipated, or indeed may not occur at all" makes far more sense. The same caution is not required here, however, as the [*6]Defendants would be entitled to "reimbursement" of all the defense costs incurred pursuant to Section 12.02(d)(i) (NYSCEF Doc. No. 2, §12.02[d][i]).
Simply put, a party is not required to wait until its liability is established in an underlying action before it can bring a declaratory action under New York law (see Hudson Ins. Co. v AK Const., LLC, 92 AD3d 521 [1st Dept 2012]). And, here a live and justiciable controversy exists as to whether the Defendants must provide Allergan with its defense costs in the Opioid Lawsuits. Accordingly, the motion to dismiss the breach of contract, contractual indemnification and declaratory judgment causes of action is denied.
III. The Complaint Fails to State a Claim for Equitable Indemnification
The principle of equitable indemnification, also known as common law indemnification, allows a non-culpable party who has been compelled to make a payment to shift the entire burden of loss to the liable party and obtain from that party full reimbursement for its loss (Live Invest, Inc. v Morgan, 57 Misc 3d 762 [Sup Ct Suffolk Cnty September 7, 2017]). The obligations that the Defendants undertook with respect to Kadian® were expressly defined in the APA. A valid and enforceable contract generally precludes recovery in quasi contract for losses arising from the same subject matter (Clark-Fitzpatrick, Inc. v Long Island R. Co., 70 NY2d 382 [1987]). Allergan cannot circumvent the APA by proceeding under an equitable theory of indemnification to recover more than it would otherwise be entitled to under the APA (CSC Scientific Co., Inc. v Manorcare Health Serv., Inc., 867 F Supp 2d 368 [SD NY 2011]). The equitable indemnification claim is dismissed, without prejudice to permit Allergan's to replead this claim within 30 days if Allergan can assert a non-contractual basis.
IV. The Contribution Claim is Not Premature
Contribution is available where two or more tortfeasors combine to cause injury, and is determined in accordance with the relative culpability of each party (Godoy v Abamaster of Miami, 302 AD2d 57, 61 [2d Dept 2003]. The Defendants argue that the contribution claim should be dismissed because no finding of responsibility has been made in the Opioid Lawsuits, citing Petrucci v City of NY (167 AD2d 29, 32 [1st Dept 1991]. In Petrucci, the First Department held that in an action to recover damages for breach of contract it was error to dismiss the defendant municipality's cross claim against the transit authority defendant as untimely because claims for contribution do not accrue for limitations purposes until the party seeking contribution has made payment to the injured party. Petrucci, thus, addresses an issue of limitations on an action, it does not address the question of when an action for contribution may be commenced. Inasmuch as a claim for contribution generally does not arise until the prime obligation to pay has been established, in appropriate circumstances, courts have allowed claims for contribution to go forward on the basis of liability (see Mars Assoc., Inc. v NY City Educ. Constr. Fund, 126 AD2d 178, 192 [1st Dept 1987]; Gorton v Marmon, 2012 WL 1463416 [Sup Ct NY Cnty April 16, 2012). This is particularly compelling here because it is not at all clear that this action is wholly independent from the Opioid Lawsuits. In fact, there are likely to be significant issues of fact development and liability that may well be determined in the Opioid Lawsuits that might effect the Defendants' obligations in this action.
Accordingly, it is
ORDERED that the Defendants' motion to dismiss is granted with respect to fourth cause of [*7]action for equitable indemnification, with leave to replead, and is otherwise denied; and it is further
ORDERED that the Defendants file an Answer to the Complaint within 45 days of this decision and order, and it is further
ORDERED that the parties appear for a preliminary conference in Part 53 on June 2, 2020 at 11:30 AM.
DATE: 4/13/2020