■ ATINSOLA MARTINS et al., Plaintiffs, v LITTLE 40 WORTH ASSOCIATES, INC., et al., Defendants/Third-Party Plaintiffs-Appellants. PARTNERS CLEANING, LLC, Third-Party Defendant-Respondent. PARTNERS CLEANING, LLC, Second Third-Party Plaintiff-Respondent, v TWI-LAQ INDUSTRIES, INC., Second Third-Party Defendant-Respondent, and CHEMICAL SPECIALTIES MANUFACTURING CORPORATION, Second Third-Party Defendant-Appellant. [899 NYS2d 30]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered December 8, 2008, which, to the extent appealed from, denied the motion of third-party plaintiffs Little 40

Worth and Newmark for summary judgment against third-party defendant Partners Cleaning for breach of contract and indemnification, denied the cross motion of second third-party defendant Chemical Specialties for summary judgment dismissing the second third-party complaint and all cross claims against it, and granted the motion of second third-party defendant Twi-Laq Industries for summary judgment to the extent of awarding it conditional indemnification against Chemical Specialties, affirmed, without costs.

Plaintiff claimed to have sustained asthma and exposure to hazardous chemical fumes from the shampoo used to clean carpets at his place of employment. The product, Formula 161, was manufactured by Chemical Specialties and distributed by Twi-Laq.

To establish a relationship between an individual's illness and a toxin suspected of causing such illness, a plaintiff must establish (1) his level of exposure to the toxin; (2) general causation—that the toxin could in fact cause the illness, and the level of exposure that would engender such illness (the dose-response relationship); and (3) specific causation—the likelihood that this specific toxin did cause the plaintiff's injury (*Parker v Mobil Oil Corp.*, 7 NY3d 434, 446 n 2 [2006]). The analysis and calculations of Chemical Specialties's expert were based on assumptions not supported by the record, namely, the size of the room, the percentage of floor shampooed, and the degree of dilution of Formula 161 used at the time.

Entitlement to full contractual indemnification requires a clear expression or implication, from the language and purpose of the agreement as well as the surrounding facts and circumstances, of an intention to indemnify (*Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). Here, the building owner and manager failed to establish the terms of the purchase order for carpet-cleaning services.

Common-law indemnification requires proof not only that the proposed indemnitor's negligence contributed to the causation of the accident, but also that the party seeking indemnity was free from negligence (*Correia v Professional Data Mgt.*, 259 AD2d 60, 65 [1999]). Here, the building owner and manager did not establish their own freedom from negligence, since there was no evidence that they did not supervise, direct or control the work of the contractor (*see e.g. Uribe v Fairfax, L.L.C.*, 48 AD3d 336 [2008]).

However, a "distributor of a defective product has an implied right of indemnification as against the manufacturer of the product" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 62 [2003],

*lv dismissed* 100 NY2d 614 [2003]). Accordingly, Twi-Laq was entitled to conditional indemnification from Chemical Specialties (*see German v Morales*, 24 AD3d 246 [2005]).

We have considered appellants' remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Saxe, Abdus-Salaam and Román, JJ.

Nardelli, J., dissents in part in a memorandum as follows: I agree with the majority that the motion court did not err in denying the summary judgment motion by the owner and managing agent of the building seeking contractual indemnification against the carpet cleaning contractor, and the cross motion by the chemical manufacturer for summary judgment dismissing the second-third party claim asserted against it by the cleaning contractor. As the majority notes, there are questions of fact concerning the extent of, or lack of, supervision by the building owner and its agent in the cleaning process, and, as well, as to whether the cleaning contractor was negligent in applying the cleaning fluids. Additionally, the record does not support, as the majority notes, any conclusions as to "the size of the room, the percentage of floor shampooed, and the degree of dilution of Formula 161 used [when the carpeting was cleaned]."

Due to the existence of such questions, and, thus, because there is nothing in this record which conclusively establishes the proximate cause of plaintiff's injuries, I submit that it was premature to grant the cleaning contractor conditional indemnification against Chemical Specialties Manufacturing Corp., the manufacturer of the cleaning solution.

Until such time as it is established that the product as manufactured (or as labeled) was defective, there is no reason to grant conditional indemnification. As this Court has noted, "[when] it has not yet been determined whether any party's negligence contributed to [an] accident, a finding of common-law indemnity is premature" (*Barraco v First Lenox Terrace Assoc.*, 25 AD3d 427, 429 [2006]).

I believe that the majority's reliance upon *Godoy v Abamaster of Miami* (302 AD2d 57 [2003], *lv dismissed* 100 NY2d 614 [2003]) is misplaced, since that case involved a situation where there had been a jury finding that a retail distributor, as well as a wholesale distributor, bore strict liability for selling an unsafe product manufactured by a foreign company over which jurisdiction could not be obtained. Since there was a finding that the product, a meat grinder, was itself defective, the court concluded that the distributor in closest privity with the manufacturer should indemnify the more remote distributor, i.e., the retail seller. In this case, however, there has not been any determina-

tion by a factfinder that the cleaning solution was defective. Thus, there cannot presently be any allocation of liability.

The majority also relies upon *German v Morales* (24 AD3d 246 [2005]). There, this Court, in vacating the dismissal of the complaint, as well as the cross claim for indemnification asserted by the distributor against the manufacturer, made a specific finding, with regard to only one defendant, that there was a question of fact as to whether a can of lacquer thinner was improperly labeled, and that such improper labeling was the proximate cause of the plaintiff's injuries. I submit that *German* is inapposite to this case because, as the majority finds, there are questions of fact as to whether more than one party, including the landlord (for failure to supervise) and the cleaning contractor (for, inter alia, using too much solution), may also be held responsible.

Consequently, until such time as it is determined which party, if any, proximately caused plaintiff's injuries, or, at least, the field of potentially responsible parties is narrowed to one, the grant of conditional indemnification against any party is premature. **[Prior Case History: 2008 NY Slip Op 33268(U).]**