*444 In this action arising from a teacher’s alleged exposure to allergens at school, the record reflects the following: Wayne Cleghorne was a school teacher employed by the New School for Arts and Sciences (New School). On August 28, 2000, the New School relocated to 730 Bryant Avenue in the Bronx. Shortly after the move, Cleghorne claims she developed respiratory problems while cleaning her classroom and storage area at the new location. In November of 2000, Cleghorne was diagnosed with asthma. On November 30, 2000, her family practitioner diagnosed her with bronchitis, and she did not work for approximately a month.
Cleghorne returned to work in early January 2001, but had an asthma attack at the New School on February 2, 2001, and was hospitalized for a week. Cleghorne and her husband filed a notice of claim against the City alleging that her asthma was caused by conditions at the New School and seeking damages.
At the General Municipal Law § 50-h examination on September 26, 2001, Cleghorne stated that while cleaning her classroom and a storage room in the new building, she developed a persistent cough, and that subsequently her condition deteriorated. She described the events leading to her admission to the hospital, and stated that after discharge, she contacted a physician for asthma treatment. He referred her to an allergist. Cleghorne stated that she received weekly medical treatment following the February 1, 2001 incident, suffered many relapses, and was occasionally confined to home for “[a] few months” and bed “[mjany times.”
On October 15, 2001, plaintiffs commenced this action against the Board of Education, the City of New York, and two principals of the New School individually, for negligence, public and private nuisance, violation of OSHA regulations, and violations of the New York City Administrative Code and other statutes. On August 6, 2010, defendants moved for summary judgment dismissing the complaint. Defendants argued that Cleghorne did not develop asthma as a result of her exposure to toxins at the New School, but rather that she had an existing asthmatic condition. In support of their motion, defendants provided the expert report of Dr. Jack J. Adler, a pulmonologist *445 who had conducted an examination of Cleghorne and reviewed her medical records. He noted that in 1994 Cleghorne experienced difficulty breathing after a fan blew cold air on her in her classroom, and that since 1995, she experienced dyspnea, or shortness of breath, on exertion, a condition commonly associated with asthma.
Dr. Adler concluded that plaintiff had developed asthma prior to moving to the new school location and that “environmental contaminants” at the school did not cause the condition. Dr. Adler explained that Cleghorne has “atopic or allergic asthma” and is “allergic to several common allergens, including tree and ragweed pollen, dust mites, dogs, cats, cockroaches . . . mold spores . . . and mouse and rat antigens . . . none of which are exclusive to the New School.” Because these environmental contaminants “are extremely prevalent,” she would likely have “similar symptoms in any other urban environment.” Dr. Adler concluded that, while working at the New School, Cleghorne was simply experiencing asthmatic symptoms triggered by common allergens.
On October 4, 2010, plaintiffs cross-moved for summary judgment and sought denial of defendants’ summary judgment motion. In support, plaintiffs submitted the affidavit of their expert, Dr. Hugh Cassiere, and an affidavit from Cleghorne that provided more detail concerning the conditions in the school.
In the affidavit, Cleghorne stated that when the school moved to the new location, she spent several hours a day during the week before the school opened cleaning up dust, dirt, rodent droppings and carcasses, cobwebs, dead insects, mildew and mold. Cleghorne further stated that after classes began, she cleaned her classroom twice daily. Cleghorne described her symptoms and medical treatment consistent with her section 50-h testimony.
Plaintiffs’ expert, Dr. Cassiere, opined that Cleghorne did not have asthma prior to 2000, but rather suffered from a respiratory condition described as asymptomatic “airway hyper responsiveness” (AHR). Crediting Cleghorne’s account of her exposure at the school, Cassiere concluded that Cleghorne’s asthma was caused in 2000 by “high-level exposure to, and daily inhalation of dust, dirt, rodents, rodent dander, mold, mildew, cockroaches, and bug carcasses.”
In reply, defendants asked the motion court, inter alia, to exclude Cassiere’s report on the basis that his opinion on causation and the methodology used to form that opinion was not generally accepted in the medical community. Alternatively, defendants asked the court to conduct a Frye hearing.
*446 In support, defendants submitted another affidavit from Dr. Adler, which asserted that Cassiere’s theory of causation and his methodology were not generally accepted in the medical community because it made a “false distinction between AHR and asthma,” and that it is not possible to diagnose AHR without pulmonary testing. Defendants also asserted that Cleghorne had not shown what levels of allergens or toxins she was exposed to, much less that the alleged level of exposure was sufficient to cause asthma.
Plaintiffs, in reply submitted another affidavit from Cassiere wherein he listed studies purporting to show that it is generally accepted that AHR and asthma are separate conditions, but that AHR can develop into asthma under conditions such as those to which Cleghorne was allegedly exposed at the school. The motion court denied both motions, finding that there were triable issues as to causation and as to the safety of Cleghorne’s work environment.
For the reasons set forth below, the motion court should have dismissed the complaint in its entirety. Initially, we note that the complaint must be dismissed as against the City of New York because the City is not a proper party to this action (see Flores v City of New York, 62 AD3d 506 [1st Dept 2009]). Furthermore, the action cannot proceed against the individual defendants because they were not named in the notice of claim (see General Municipal Law § 50-e; Tannenbaum v City of New York, 30 AD3d 357, 358 [1st Dept 2006]).
Plaintiffs claims against the remaining defendant, Board of Education of the City of New York, also fail. Even if this Court were to accept that plaintiff developed asthma only after starting work at the New School in 2000, and that AHR is a separate condition, plaintiff is still obliged to show specific causation. Namely, plaintiff must at least raise a triable issue of fact as to her exposure to a specific toxin or allergen; quantify the level of exposure to some degree; and posit that such level of exposure was sufficient to produce the alleged injuries (Parker v Mobil Oil Corp., 7 NY3d 434, 448-449 [2006]). While Parker recognizes that the level of exposure need not always be quantified “precisely,” it is still necessary that “whatever methods an expert uses to establish causation [they be] generally accepted in the [medical] community” (id. at 448). Such methods include “mathematical modeling or comparing plaintiffs exposure level to those of study subjects whose exposure levels were precisely determined” (Todman v Yoshida, 63 AD3d 606, 607 [1st Dept 2009]).
Here, the only “method” plaintiffs’ expert used to establish *447 specific causation was to accept, at face value, the anecdotal allegations of plaintiffs uncorroborated affidavit that she was exposed to dust, bugs, rodent droppings and carcasses in unspecified quantities, and began experiencing asthma, purportedly for the first time, as a result.
Cleghorne stated in her affidavit — dated more than nine years after the relevant events — that “[t]he premises . . . were replete with rodents, rodent carcasses, rodent droppings, cobwebs, cockroaches, cockroach and other bug carcasses, mildew, thick-black dust, and excessive dirt.” She also stated that “numerous ceiling tiles were water-damaged and broken; there was mold on the ceiling tiles by the vents, mold on the walls, and mold in the closets.” Cleghorne further stated that once school began, “[e]very morning [she] cleaned cobwebs, bug carcasses, mildew, and mold in [her] classroom as well as wiped dust . . . and dirt from the vents along the windowsills [and that] [o]n almost a daily basis, [she] wiped rodent droppings from along the vents of the classroom’s windowsill.”
Plaintiffs’ expert, based only on this affidavit, characterized Cleghorne’s exposure as “high-level.” This was an insufficient basis for his theory, given that “replete” is a meaningless and vague quantifying adjective (see e.g. Martins v Little 40 Worth Assoc., Inc., 72 AD3d 483 [1st Dept 2010] [expert’s calculation of the level of exposure was based on assumptions not supported by the record]). Plaintiffs’ expert did not provide any scientific measurement or employ any accepted method of extrapolating such a measurement, and plaintiffs offered no other evidence concerning the level of allergens or toxins present in the school. Although plaintiffs’ expert cited six studies in support of his theory of causation, he failed to compare Cleghorne’s exposure level to those of the study subjects. Nor could he have since the studies listed common allergens, but did not differentiate between them or provide exposure levels.*
Nor did plaintiffs’ expert posit the level of exposure necessary for the causation of injury. In Fraser v 301-52 Townhouse Corp. (57 AD3d 416 [1st Dept 2008], appeal dismissed 12 NY3d 847 [2009]), we granted defendant’s motion for summary judgment dismissing plaintiffs personal injury claims because, inter alia, plaintiff failed to present any evidence supporting specific causa-
*448 tion. We found that plaintiff failed to show that he was exposed to a level of mold sufficient to cause his alleged injury. We further found that plaintiffs expert failed to specify the threshold level of exposure to dampness or mold that would cause the plaintiffs health problems (id. at 419). Here too, plaintiffs offer no quantification whatsoever of the level of Cleghorne’s allergen exposure, nor does plaintiffs’ expert specify what level of any of the allergens would cause AHR to progress to chronic asthma (see e.g. Smolowitz v Sherwin-Williams Co., 2008 WL 4862981, 2008 US Dist LEXIS 91019 [ED NY, Nov. 10, 2008, No. 02-CV-5940] [complaint dismissed because plaintiffs expert failed to quantify the amount of the toxin to which plaintiff was allegedly exposed or that limited exposure can cause the plaintiffs disease]).
We have considered plaintiffs’ remaining arguments and find them unavailing. Concur — Tom, J.E, Friedman, Catterson, Acosta and Freedman, JJ.

 One study referenced allergens including dust, house dust mite, animal danders, tree pollen, grass pollen and molds. Another referenced dust, mold, furred animals, cockroaches and pollens. One study stated that “constrictor agonists” were administered to its subjects to study airway response, but did not specify what they were. The last study examined the effects of exposure to quartz, asbestos, dust & fumes, but not allergens.