■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICHOLAS BROOKS, Appellant. [23 NYS3d 26]—

Judgment, Supreme Court, New York County (Bonnie G. Wittner, J.), rendered September 23, 2013, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, unanimously affirmed.

The court properly granted the People's motion for a hearing pursuant to *Frye v United States* (293 F 1013 [DC Cir 1923]) on the issue of the scientific underpinnings of the defense expert's theory. Defendant's forensic pathologist was not an expert in toxicology and could provide no authority to support his theory that five prescription drugs found in the victim's system interacted with one another so as to heighten their sedative effect and cause the victim to die accidentally, either directly from overdose or secondarily through accidental drowning in a bathtub as a result of unintended drug-induced incapacitation. Defendant's claim that he was prejudiced by the mere fact that a hearing was held is unsubstantiated.

The court properly exercised its discretion in issuing various preclusive rulings. Among other rulings, the court properly precluded defendant's pathologist from affirmatively opining that the victim was not forcibly drowned. The expert was permitted to testify, among other things, that a victim of forcible drowning would be expected to have a substantial amount of fluid in the sphenoidal sinus, rather than the "minimal amount" of fluid found in the victim here. In this regard, defendant's contention that, in the absence of published authority directly on point, his pathologist was entitled to rely on his experience, is unavailing (*compare People v Oddone*, 22 NY3d 369 [2013] [expert may, in appropriate circumstances, rely on own experience]). Although the pathologist had performed

hundreds of autopsies, he could recall only one involving a forcible drowning. Even in that one case, the pathologist could not recall whether the victim had fluid in the sphenoid sinus. Hence, the pathologist's experience simply provided no basis for him to opine that fluid in the sphenoid sinus is a sine qua non marker of *forcible* drowning (*see Cleghorne v City of New York*, 99 AD3d 443, 447 [1st Dept 2012]).

The court properly limited testimony about drug-related issues, including drug screening protocols employed by the Office of the Chief Medical Examiner and the independent laboratory it employs, and what drugs, other than the five found in postmortem testing, that the victim had been prescribed in the past. Questions about what drugs might have been found through further screening would have been unduly speculative (*see People v Blount*, 286 AD2d 649 [1st Dept 2001], *lv denied* 97 NY2d 701 [2002]). Moreover, such speculation was not necessary to establish defendant's defense, since the fact that the victim was found to have five drugs in her system, most of which had sedative effects and one of which was in a super-therapeutic concentration, gave the defense ample room to argue that additive and synergistic effects might have incapacitated the victim and caused her to slip under the bath water. Questions about what other drugs the victim had been prescribed in the past likewise would have been speculative and collateral.

Similarly, given the absence of any evidentiary basis to believe that defendant and the victim had ever engaged in erotic choking, the trial court properly precluded defendant's pathologist from testifying that rough sex or erotic choking might have caused bruising found on the victim's body.

Defendant's argument that the court compounded the alleged error in its preclusive rulings by precluding the defense from making similar arguments during summation is similarly without merit. Nor did the court act improperly in threatening defense counsel with contempt for repeatedly flouting the court's preclusive rulings (*see People v Gonzalez*, 38 NY2d 208, 210 [1975]).

The court provided meaningful responses to jury questions during deliberations (*see People v Almodovar*, 62 NY2d 126, 131 [1984]; *People v Malloy*, 55 NY2d 296, 301-302 [1982], *cert denied* 459 US 847 [1982]).

The court properly admitted testimony from friends of the victim reflecting the victim's unfavorable perception of defendant's character, in order to show the victim's beliefs as part of a showing that the couple had been arguing and that the victim

had been attempting to break up with defendant. Proof of the "murder victim's espoused intention to terminate her relationship with, and stay away from, defendant" was admissible to show the "victim's state of mind" and was "relevant to the issue of the motive of defendant, who was aware of the victim's attitude, to kill the victim" (*People v Martinez*, 257 AD2d 410, 411 [1st Dept 1999], *lv denied* 93 NY2d 876 [1999]). Hence, the background information about the couple's "strife and unhappiness" was admissible as "highly probative of the defendant's motive and [was] either directly related to or inextricably interwoven with the issue of his identity as the killer" (*People v Bierenbaum*, 301 AD2d 119, 146 [1st Dept 2002] [citation and internal quotation marks omitted], *lv denied* 99 NY2d 626 [2003], *cert denied* 540 US 821 [2003]; *see also People v Sorrentino*, 93 AD3d 450, 451 [1st Dept 2012], *lv denied* 19 NY3d 977 [2012]). The friends' testimony about disputes between defendant and the victim was similarly admissible (*see People v Gamble*, 18 NY3d 386, 398 [2012]).

The court properly denied defendant's CPL 330.30 (2) motion to set aside the verdict on the ground of alleged juror misconduct (42 Misc 3d 1209[A], 2013 NY Slip Op 52261[U] [2013]). There was no evidence that the juror at issue had engaged in misconduct or that defendant had suffered prejudice to any substantial right (*see People v Hernandez*, 107 AD3d 504 [1st Dept 2013], *lv denied* 22 NY3d 1199 [2014]). Nor was defendant "entitled to a hearing based on expressions of hope that a hearing might reveal the essential facts," given the absence of any evidence of misconduct or actual impact on the deliberative process (*People v Johnson*, 54 AD3d 636, 636 [1st Dept 2008], *lv denied* 11 NY3d 898 [2008]). Concur—Tom, J.P., Renwick, Saxe and Kapnick, JJ.