People v Hernandez (2020 NY Slip Op 02100)





People v Hernandez


2020 NY Slip Op 02100


Decided on March 26, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 26, 2020

Friedman, J.P., Kern, Oing, González, JJ.


4863/12 -430 11259

[*1]The People of the State of New York, Respondent,
v
Pedro Hernandez, Defendant-Appellant. Chief Defenders Association of New York and The Innocence Project Inc., Amici Curiae.


Robert S. Dean, Center for Appellate Litigation, New York (Ben A. Schatz of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Vincent Rivellese of counsel), for respondent.
The Legal Aid Bureau of Buffalo, Inc., Buffalo (Erin A. Kulesus of counsel), for Chief Defenders Association of New York amicus curiae.
Simpson Thacher & Bartlett LLP, New York (Mark Stein of counsel), for The Innocence Project Inc., amicus curiae.



Judgment, Supreme Court, New York County (Maxwell Wiley, J.), rendered April 18, 2017, convicting defendant, after a jury trial, of murder in the second degree and kidnapping in the first degree, and sentencing him to concurrent terms of 25 years to life, unanimously affirmed.
The court properly denied defendant's suppression motion. There is no basis for disturbing the hearing court's factual determinations. The hearing record establishes that, under the totality of circumstances, defendant's statements made before he received Miranda warnings were not the product of custodial interrogation, because a reasonable innocent person in defendant's position would not have thought he was in custody (see People v Yukl, 25 NY2d 585 [1969], cert denied 400 US 851 [1970]). Defendant voluntarily accompanied the detectives to a New Jersey police station, where he was not locked into the facility, handcuffed or restrained, and he was permitted to move around in a manner that was inconsistent with a custodial setting. The detectives repeatedly told defendant he was free to leave. In the context of all the surrounding circumstances, those explicit assurances were not undermined when, on several occasions, the detectives expressed their preference that defendant complete the interview before he left or spoke to his wife, and defendant voluntarily opted to continue. Furthermore, the interview was never hostile or accusatory.
The court also correctly determined that defendant made a knowing and intelligent waiver of his Miranda rights. The evidence, including the videotape of defendant's ultimate interview by an Assistant District Attorney as well as expert testimony presented by both sides, supports the conclusion that defendant was not so mentally ill, lacking in intelligence, or impaired by medication that he was incapable of intelligently waiving his rights (see People v Williams, 62 NY2d 285 [1984]). An interchange between defendant and the interviewing Assistant, in which defendant asked intelligent questions about his right to counsel and received appropriate answers, demonstrates defendant's ability, rather than inability, to understand his rights.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). Initially, we find that [*2]defendant's confession was corroborated to the limited extent required by CPL 60.50. That statute is satisfied by the production of "some proof, of whatever weight, that a crime was committed by someone" (People v Chico, 90 NY2d 585, 589 [1997]). Here, the unexplained disappearance in 1979 of six-year-old Etan Patz, who has not been located or heard from since, presented strong circumstantial evidence that he was kidnaped and murdered (see People v Lipsky 57 NY2d 560, 571-572 [1982]).
Next, we find that defendant's confession to law enforcement was reliable and truthful. Defendant offered certain details without any prompting, such as offering Etan a soda, that were consistent with other evidence. Defendant also led detectives to the place where he thought he had left the body, but expressed uncertainty because of the presence of a door; detectives later learned that the owner had installed the door after 1979. Defendant made generally similar admissions to civilians over a period ranging from shortly after Etan's disappearance to immediately after he confessed to the authorities. Defendant's account was consistent with his admissions at a religious retreat, where he told fellow participants that he had strangled a boy while working at a store, and placed his body in a bag, which he put with the trash. After his confession to law enforcement, defendant also admitted to his wife and daughter that he had killed a boy, and told a nurse that he had choked a person 33 years earlier. Any inconsistencies within defendant's confession, or between that confession and his admissions to civilians, or between his various statements and other evidence in the case, were sufficiently explained. The evidence does not support defendant's claim that he gave a false confession due to a susceptibility resulting from mental impairment. Aside from the fact that defendant volunteered essentially the same admission to civilians, the evidence showed that defendant lived as a well-functioning, employed family man for many years, and the jury could have reasonably rejected the expert testimony introduced by defendant regarding his mental condition. Furthermore, there is no evidence that the facts stated in defendant's confession were contaminated by police suggestion or otherwise.
We also find that evidence regarding the possible culpability of an alternative suspect was too weak to affect the weight of the evidence establishing defendant's guilt. Although the other suspect was a convicted child molester, his admission that on the day Etan disappeared, he had sexually molested a boy named "Jimmy," whom he brought to his apartment and then put on a subway to his aunt's home, had little connection with the facts of this case.
The evidentiary rulings challenged on appeal were provident exercises of discretion that did not impair defendant's right to present a defense or any other constitutional right (see Crane v Kentucky, 476 US 683, 689-690 [1986]). Defendant had an ample opportunity to introduce evidence about the above-discussed alternative suspect, and the evidence offered by defendant relating to yet another possible suspect was so remote as to be irrelevant (see People v DiPippo, 27 NY3d 127, 135-136 [2016]). With regard to hearsay evidence offered by both sides, the court properly concluded that the evidence offered by the People was admissible, not for its truth, but for legitimate nonhearsay explanatory purposes (see People v Tosca, 98 NY2d 660 [2002]), while the evidence offered by defendant was not admissible on that, or any other basis (see People v Burns, 6 NY3d 793, 795 [2006]). The court also providently exercised its discretion in precluding expert testimony on the effect on memory of a lengthy passage of time, because the proposed testimony was within the jurors' ordinary experience and knowledge. We reach similar conclusions as to the other evidentiary issues raised on appeal, including defendant's constitutional claims.
The court provided a meaningful response to a jury note on the subject of the voluntariness of confessions (see generally People v Almodovar, 62 NY2d 126, 131 [1984]; People v Malloy, 55 NY2d 296, 302 [1982], cert denied 459 US 847 [1982]). Given the precise wording of the note, the court's brief response was correct. Even assuming, without deciding, that the court should have added instructions on the circumstances whereby a statement may or may not be attenuated from a prior statement found to be involuntary, there is no reasonable possibility that the verdict would have been different had those instructions been given (see People v Petty, 7 NY3d 277, 286 [2006]; People v Jones, 3 NY3d 491, 497 [2004]), in light of the strong evidence that defendant's confession to the Assistant District Attorney was fully [*3]attenuated from all of his confessions to the police, as well as being corroborated by defendant's various confessions to civilians.
The court providently exercised its discretion in denying, without an evidentiary hearing, defendant's CPL 330.30(2) motion to set aside the verdict on the ground that the jury had been improperly influenced by extraneous information (see People v Samandarov, 13 NY3d 433, 436-438 [2009]). Defendant did not provide affidavits from anyone with first-hand knowledge of the material facts. While affidavits in support of such a motion may be based on information and belief, here the "information" in a defense investigator's affidavits was limited to news media accounts, along with statements by a juror and an alternate that failed to support, or contradicted, defendant's theory of improper influence. None of this information was sufficient to require a hearing (see id.). Defendant acknowledged his inability to provide more information, and he was not "entitled to a hearing based on expressions of hope that a hearing might reveal the essential facts" (People v Brooks, 134 AD3d 574, 576 [1st Dept [2015], affd 31 NY3d 939 [2018]). Furthermore, defendant did not demonstrate that the extraneous information
allegedly made known to the jury had any effect on its deliberations, or that it was inherently prejudicial.
We perceive no basis for reducing the sentence.
We have considered and rejected defendant's remaining claims. M-430 - People v Hernandez
Motion to file amicus curiae brief granted,
and the brief deemed filed.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 26, 2020
CLERK