## Ledonne v 450 Partners LLC

2024 NY Slip Op 31359(U)

April 18, 2024

Supreme Court, New York County

Docket Number: Index No. 152279/2017

Judge: Alexander M. Tisch

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. ALEXANDER M. TISCH**     PART **18**

*Justice*

-----------------------------------------------------------------X

ROBERT LEDONNE,

         Plaintiff,

- v -

450 PARTNERS LLC, TISHMAN CONSTRUCTION CORP.,
LIMITED INTERIORS GROUP, BROOKFIELD
PROPERTIES DEVELOPER LLC, BROOKFIELD
FINANCIAL PROPERTIES LP, BROOKFIELD
PROPERTIES W 33RD GP LLC, BROOKFIELD
PROPERTIES W 33RD HOLDINGS LLC, BROOFIELD
PROPERTIES W 33RD CO. L.P.,

         Defendants.

----------------------------------------------------------------X

LIMITED INTERIORS GROUP

         Plaintiff,

-against-

CONSENTINI ASSOCIATES, INC.

         Defendant.

----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 152279/2017 |
| MOTION DATE | 02/28/2023, 02/28/2023, 02/28/2023 |
| MOTION SEQ. NO. | 006 007 008 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595434/2018

The following e-filed documents, listed by NYSCEF document number (Motion 006) 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 209, 210, 213, 216, 219, 220, 221, 222, 223, 224, 225, 245, 246, 251, 252, 254, 256, 259, 260, 265, 266, 267, 270

were read on this motion to/for      SUMMARY JUDGMENT (AFTER JOINDER)   .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 207, 211, 214, 217, 226, 227, 228, 229, 230, 231, 232, 247, 248, 255, 257, 261, 262, 268

were read on this motion to/for          JUDGMENT - SUMMARY      .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 208, 212, 215, 218, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 249, 250, 253, 258, 263, 264, 269

were read on this motion to/for          JUDGMENT - SUMMARY      .

[* 1]

This is an action to recover damages for personal injuries allegedly sustained by a field engineer on May 14, 2014, when, shortly after exiting an electrical room at a construction site located at 450 West 33rd Street, New York, New York (the Premises), a floor tile came loose and moved when he stepped on it, causing his foot to fall partway through to the concrete subfloor, approximately 12 to 18 inches below.

In motion sequence number 006, defendant Limited Interiors Group (Limited) moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint and all cross-claims as against it.

In motion sequence number 007, defendant Tishman Construction Corp. (Tishman) moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it.

In motion sequence number 008, defendants 450 Partners LLC (450 Partners), Brookfield Properties Developer LLC, Brookfield Financial Properties LP, Brookfield Properties W 33rd GP LLC, Brookfield Properties W 33rd Holdings LLC and Brookfield Properties W 33rd CO., L.P. (collectively Brookfield) (together the Building Defendants), move, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against them, and for summary judgment in their favor on their on their cross-claims against Limited.

In relation to each of the above motions, plaintiff cross-moves, pursuant to CPLR 3212, for summary judgment in his favor as to liability on his Labor Law §§ 240 (1) and 241 (6) claims as against all defendants.

## BACKGROUND

On the day of the accident, the Premises was owned by 450 Properties and managed by Brookfield. Brookfield hired Limited to perform a gut demolition of the third floor of the Premises, including removal of the raised tile floor (the Limited Project). Separately, Brookfield

hired Tishman, pursuant to a construction management agreement, to perform exterior and interior renovations of the Premises, including some renovations of the third floor (the Tishman Project). Tishman hired non-party Cosentini Associates (Cosentini) to provide electrical design services regarding the removal and installation of electrical service equipment at the Premises, including on the third floor.[1] Plaintiff was employed by Cosintini.

### *Plaintiff's Deposition Testimony*

Plaintiff testified that on the day of the accident, he was a field engineer for Cosentini. His duties included "surveying a new project, seeing what exists in the field . . . mostly coordination when there's a job going up" (plaintiff's tr at 9; NYSCEF Doc. No. 195). Surveying a project entails inspecting a property in order to prepare electrical or plumbing drawings for the contractor in advance of construction work (*id.* at 10). Prior to the accident, plaintiff had been to the Premises four or five times, at Tishman's request, to determine electrical issues.

On the day of the accident, Tishman requested that plaintiff "get power for certain pieces of equipment" (*id.* at 25). Specifically, plaintiff was asked to determine whether the Premises had sufficient power to operate temporary construction equipment in advance of Tishman's construction (*id.* at 25). To make these determinations, plaintiff had to access an electrical room on the third floor of the Premises.

Plaintiff testified that the third floor was partially demolished, including portions of the flooring (*id.* at 28). The flooring consisted of "raised floors" (*id.* at 26) made up of tiles resting on four "stanches, one on each corner" (*id.* at 100). Part of the third floor's raised floor was demolished (*id.* at 35), exposing the "concrete slab underneath" and "some pipes or . . . conduits"

---

[1] Cosintini was a third-party defendant in this action. By decision and order, dated January 30, 2019, Cosintini was dismissed from this action.

[* 3]

(*id.* at 36). The undemolished portion of the raised floor led from the freight elevator to the electrical room (*id.* at 35).

Plaintiff testified that prior to the accident he had taken the freight elevator to the third floor, walked on the undemolished portion of the raised flooring, and entered the electrical room along with two coworkers. After performing his work, he left the electrical room and took four steps on the undemolished portion of the raised floor when, suddenly, his "right foot went down" through a tile (*id.* at 33). He later clarified that "the whole tile moved" when he stepped on it, causing his foot to drop through the raised floor and his knee to twist sideways (*id.* at 101). After his foot went through the raised floor, he fell to the ground. A coworker helped him back up and he continued working.

### Deposition Testimony of Jim Greco (Brookfield's Property Manager)

Jim Greco testified that at the time of the accident, he was a senior property manager employed by Brookfield. Brookfield is an owner and manager of commercial real estate (Greco tr. at 5; NYSCEF Doc. No. 196). At the time of the accident, it managed the Premises. 450 Partners was the owner and is also a subsidiary of Brookfield (*id.* at 7). Greco was the property manager at the Premises. His duties included overseeing tenant relations and maintenance, and general coordination of trades, specifically "trades that [he] would call and give a contract to" (*id.* at 33).

Greco testified that at the time of the accident, Brookfield had hired Tishman as the general contractor for a major renovation project – the Tishman Project – that was underway at the Premises. It included replacing the "outer skin" of the entire building, roof work and tenant space work (*id.* at 7). Greco also testified that he was not involved with the Tishman Project (*id.* at 9), and that the Tishman Project did not involve the demolition on the third floor (*id.* at 44).

[* 4]

Greco testified that there was a separate demolition project on the third floor that he was involved with. He "bid that work out" to Limited (*id.* at 12). The demolition project on the third floor entailed removing all the "finishes from the prior tenant" including "[w]alls, floors, ceiling, furniture" (*id.* at 13). There were no plans to build out the empty space; a new tenant would design and build out the "raw space" before they moved in (*id.* at 13). Specifically, the demolition project included removing raised flooring and the plumbing and electrical conduit beneath it (*id.* at 25). The demolition would ultimately leave the concrete floor bare. Greco did not know why the subject raised tile floor had not been demolished by the time of the accident (*id.* at 42).

At his deposition, Greco was shown a copy of a purchase order between 450 Partners and Limited and confirmed that it was the purchase order related to the demolition of the third floor (the Purchase Order) (*see* Building Defendants' notice of motion, exhibit M; NYSCEF Doc. No. 186. Greco also confirmed that he signed the purchase order. He also testified that Limited served as the general contractor for the demolition project (*id.* at 24).

### Deposition Testimony of Salvatore Falciglia (Tishman's Project Director)

Salvatore Falciglia testified that on the day of the accident, he was Tishman's project director and a vice president of the company. His duties as a project director included managing daily aspects of construction and being a point of contact between the owner and Tishman.

Falciglia was familiar with raised flooring, explaining that raised flooring is typically used to allow for wires and pipes to run underneath the flooring. The tiles were typically metal and secured to an "interlocking system, usually like a channel system that creates the rectangle or square" that the tile will rest in (Falciglia tr at 8; NYSCEF Doc. No. 197).

[* 5]

Falciglia worked on the Tishman Project. He explained that Tishman was hired to remove the exterior façade, upgrade and redesign the lobby, upgrade elevators, mechanical and electrical systems, create public spaces and redesign storefronts (*id.* at 9). Preconstruction began in 2013. Actual construction did not start until "late summer, early fall of 2014," several months after the accident (*id.* at 10).

Falciglia reviewed a construction management agreement between Tishman and Brookfield, and confirmed it related to the Tishman Project (the Tishman/Brookfield Agreement). He acknowledged that it was dated July 18, 2014 (*id.* at 12). Falciglia also noted that, under the Tishman/Brookfield Agreement, Tishman's work included work in mechanical and electrical rooms on the third floor (*id.* at 17). Falciglia also testified that, at the time of the accident, Tishman's work was limited to "pre-construction services, bidding, estimating, logistics, drawing reviews, etcetera" (*id.* at 19).

Tishman did not perform any demolition work on the third floor at the time of the accident. The demolition was "a Brookfield operations through another entity who was doing interior demolition on the third floor, not anything to do with Tishman" (*id.* at 18). Falciglia also testified that Tishman did not supervise or provide safety oversight regarding the demolition work on the third floor (*id.* at 29, 42). Finally, Falciglia testified that Tishman did engage in limited demolition on the third floor, such as boring holes between floors to facilitate installing new risers, but "by the time [Tishman] started, the previous contractor [had] finished the demolition" of the third floor (*id.* at 41).

### Deposition Testimony of Salvatore Alagna (Limited's President)

Salvatore Alagna testified that at the time of the accident, he was the president of Limited, an interior demolition company (Alagna tr at 5; NYSCEF Doc. No. 198). He confirmed that Brookfield hired Limited for the Limited Project, which entailed the demolition of the third floor of the Premises (*id.* at 66). Specifically, Limited was hired to demolish the third floor "from slab to slab, everything had to go . . . ceiling, flooring, walls" (*id.* at 24). The exception was the electrical closets. Limited did not "touch anything in the electrical closets" (*id.* at 25). Further, Limited had no contact or relationship with Tishman (*id.* at 70).

The Limited Project included demolition of "computer flooring" – a type of raised flooring that allows for electrical conduits and piping to run underneath it (*id.* at 34). Even though the agreement between Limited and Brookfield called for the removal of all flooring, Brookfield required Limited to leave the flooring "outside the electric closet" intact (*id.* at 35-36). That area was cordoned off with caution tape. Algana did not know who put up the caution tape.

Finally, Alagna testified that he was unsure whether, at the time of the accident, Limited had finished its work (*id.* at 64).

### Deposition Testimony of Manuel Moreno (Limited's Foreman)

Manuel Moreno testified that on the day of the accident, he was Limited's foreman on the Limited Project. His duties included directing and supervising Limited's workers (Moreno tr at 8; NYSCEF Doc. No. 199). Moreno testified that he did not have any training in how to remove raised flooring, but he learned how to do so on several occasions prior to the Project (*id.* at 24).

The job proceeded normally – first the ceilings were demolished, then the walls, and finally the floors were removed. The floor removal consisted of removing the floor tiles, as well

as the conduits and plumbing beneath them (*id.* at 43). He was not told to keep any portion of the flooring intact at the time Limited began removing the floor (*id.* at 43). No one from "the building" directed his work (*id.* at 50, 58). He also never saw or interacted with any Tishman employees at the Premises.

As part of his job, Moreno inspected the floor as it was being removed and did not find anything wrong or unsafe about the remaining flooring as it was demolished (*id.* at 51).

Moreno was unaware of the accident. He learned of it only the day before his deposition and did not know any of the specifics of how it happened.

### Deposition of Michael Lillis (Brookfield's Mechanical Supervisor)

Michael Lillis testified that on the day of the accident, he was the mechanical supervisor for Brookfield at the Premises. His duties included overseeing the building engineers and to be a point of contact for Brookfield (Lillis tr at 14; NYSCEF Doc. No. 200).

Lillis was present at the initial walkthrough with Limited. He testified that, at the walkthrough, he or Greco informed Limited that removal of the raised flooring was part of the job. Lillis also testified that the Limited Project required a six-to-eight-foot-wide portion of the raised floor to be left intact "in order to be able to walk around the floor and get to the four electric closets, and to the tenant's space" (*id.* at 33). This specification was not written in the contract, but it was discussed at the walkthrough (*id.* at 34). Ultimately, that part of the floor would also be removed.

Lillis generally oversaw the Limited Project and monitored its progress. He was present at the Premises every day during demolition. He walked the site daily along with the building's chief engineer (*id.* at 39) and observed the Limited Project's progress (*id.* at 58). He never observed Limited's work, as Limited worked during the night. Lillis also testified that

Brookfield did not direct or supervise Limited's work (*id.* at 57). Further, Lillis testified he did not inspect for safety as "that was Limited's responsibility" (*id.* at 40).

Finally, Lillis testified "no" when asked whether there was "any type of employees employed by Brookfield that would perform inspections on any type of regular basis" of Limited's work (*id.* at 57). He further confirmed that no one employed by Brookfield "would inspect or evaluate the quality of Limited's work" on a regular basis (*id.* at 58).

### Affidavit of Joseph Danatzko, P.E. (Limited's Expert)

Joseph Danatzko states he is an engineering consultant licensed in the State of New York. He also states he reviewed the pleadings and depositions in this matter and based his opinion thereon. He notes he did not have the ability to inspect the subject floor tile as it had been demolished.

He opines that the subject floor tiles were properly secured because they were "fastened with screws at the time of the incident and secured with a mastic cement to a concrete subfloor below" (Danatzko aff, at 5; NYSCEF Doc. No. 204). He opines that there is nothing in the documents he reviewed that would indicate that the subject floor tile that collapsed under plaintiff had been worked on by Limited or otherwise "made structurally unstable by the demolition activity performed by Limited" (*id.* at 5).

### Affidavit of Robert Fuchs, M.S.M.E, P.E., DFE, CFEI, CSP (Plaintiff's Expert)

Robert Fuchs states that he is a professional engineer, licensed in the State of New York. He reviewed the pleadings and depositions in this matter and based his opinion thereon. He noted that the subject raised flooring was originally constructed in accordance with the New York City Building Code and was capable of supporting a load of 2000 pounds.

Based on that, Fuchs opined that the flooring should not have collapsed under plaintiff's weight and, therefore, the system must have been "improperly supported, inadequately braced, or otherwise made unstable by the demolition activity within the third floor space" (Fuchs aff, ¶ 13; NYSCEF Doc. No. 221). He also opined that "during the demolition work the screws that fastened the floor panels to the underlying support pedestals may have been removed, thereby rendering the remaining floor panels susceptible to movement" (*id.*, ¶ 13).

Fuchs further opined that "the partial removal of the flooring system increased the potential for eccentric (off-center) loads and/or inadequate lateral restraint of the portion of the floor that remained, thereby increasing the risk for instability and failure" (*id.*, ¶ 13). Finally, he opined that, had there been bracing or supports, the flooring would not have collapsed and "plaintiff's accident would not have occurred" (*id.*, ¶ 17).

## DISCUSSION

"[T]he proponent of a summary judgment motion must make a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such *prima facie* showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). If there is any doubt as to

the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba*

*Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

### The Labor Law § 240 (1) Claims (Motion Sequence Numbers 006, 007, 008, and Plaintiff's Cross-Motions)

Limited, Tishman, and the Building Defendants move for summary judgment dismissing

the Labor Law § 240 (1) claim as against them. Plaintiff cross-moves as against each defendant

for summary judgment in his favor on the same claim.

> Labor Law § 240 (1), known as the Scaffold Law, provides as relevant:
> "All contractors and owners and their agents . . . in the erection,
> demolition, repairing, altering, painting, cleaning or pointing of a
> building or structure shall furnish or erect, or cause to be furnished
> or erected for the performance of such labor, scaffolding, hoists,
> stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes,
> and other devices which shall be so constructed, placed and operated
> as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes a nondelegable duty on owners and contractors to provide

devices which shall be so constructed, placed and operated as to give proper protection to those

individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202

AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was

designed to prevent those types of accidents in which the scaffold . . . or other protective device

proved inadequate to shield the injured worker from harm directly flowing from the application

of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st

Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

The absolute liability found within section 240 "is contingent upon the existence of a

hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety

device of the kind enumerated therein" (*O'Brien v. Port Auth. of N.Y. & N.J.*, 29 NY3d 27, 33

[2017] [internal quotation marks and citation omitted]). In addition, Labor Law § 240 (1) "must

be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC*, 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

That said, not every worker who is injured at a construction site is afforded the protections of Labor Law § 240 (1), and "a distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]; *Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007] [section 240 (1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site"). Instead, liability "is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

Therefore, to prevail on a Labor Law § 240 (1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

As an initial matter, Limited and Tishman argue that they are not proper Labor Law defendants, such that liability under the Labor Law would not apply to them.

*Limited*

Limited argues that it is not a proper Labor Law defendant as it was neither an owner or general contractor, nor an agent of either for the purposes of the Labor Law.

> "When the work giving rise to these [Labor Law] duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor. Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241."

(*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 318 [1981]; *see also Nascimento v Bridgehampton Constr. Corp*, 86 AD3d 189, 193 [1st Dept 2011] [an entity becomes a statutory agent under the Labor Law when it has been "delegated the supervision and control either over the specific work area involved or the work which [gave] rise] to the injury"] internal quotation marks and citation omitted]).

Limited is not an owner or general contractor. However, Limited is the entity responsible for the demolition of the entirety of the subject raised floor. Brookfield, acting on behalf of 450 Properties, by the Purchase Order, delegated to Limited the supervision and control over that specific demolition work.

While Limited argues that it did not have any authority over plaintiff or plaintiff's work, that is not the focus of the agent analysis. The relevant inquiry is whether Limited had authority over the injury producing work – here alleged to be the demolition of the raised flooring (*see e.g. Lazarou v Turner Constr. Co.*, 18 AD3d 398, 399 [1st Dept 2005] [determining agency pursuant to Labor Law § 240 (1) based on whether an entity had "control over the injury-producing work"]). Based on the above information, the record establishes that Limited was an agent of the Building Defendants and, therefore, it is a proper Labor Law defendant.

*Tishman*

Tishman argues that it is not a proper Labor Law defendant because the injury producing work – the demolition of the third floor's raised floor that purportedly caused plaintiff's accident – was outside the scope of its contract with the Building Defendants. Specifically, Tishman argues that it was a construction manager for the Tishman Project, which did not encompass the demolition of the third floor's floor. That demolition was a part of the Limited Project, which

was controlled by the Building Defendants directly. Therefore, Tishman contends that it had no authority to supervise or control the injury producing work or to oversee the safety of that area.

"Where a party had no authority to supervise or control the activity that caused the plaintiff's injury, that party may not be held liable" under Labor Law §§ 240 (1) or 241 (6) (*Balthazar v Full Circle Constr. Corp.*, 268 AD2d 96, 98 [1st Dept 2000] citing *Filchuk v Lehrer McGovern Bovis Constr.*, 232 AD2d 329, 330 [1st Dept 1996] [general contractor not liable where the injury producing work was not performed by the contractor's employees or its subcontractors]). "[I]f the work leading to the accident is outside the scope of what is contracted for, there is no right of control on the part of the contractor and thus no liability under [Labor Law §§ 240 (1) and 241 (6)]" (*Butt v Bovis Lend Lease LMB, Inc.*, 47 AD3d 338, 341 [1st Dept 2007]).

There is no dispute in the testimony that Tishman had no authority to supervise or control the demolition of the raised floor. Falciglia, Tishman's project director, testified that the demolition of the floor was "a Brookfield operation through another entity who was doing interior demolition on the third floor" (Falciglia tr at 18) and that such demolition did not have "anything to do with Tishman" (*id.* at 18). Similarly, Greco, Brookfield's property manager, testified that Tishman's work did not involve the demolition of the third floor's raised floor (Greco tr at 44). Rather, Greco testified that he, on behalf of Brookfield, "bid that work out" to Limited (*id.* at 12). Also, Lillis, Brookfield's mechanical supervisor, testified that he and Greco provided Limited with their work scope and parameters (Lillis tr at 33-34). In addition, Alagna, Limited's principal, testified that Brookfield hired Limited to demolish the third floor "from slab to slab, everything had to go . . . ceiling, flooring, walls" (Alagna tr at 24), and Moreno, Limited's foreman, confirmed that he directed Limited's demolition work.

In opposition, plaintiff argues the Tishman/Brookfield Agreement (plaintiff's notice of cross-motion, exhibit 3, NYSCEF Doc. No. 231) delegated a general authority to Tishman to correct any defective work at the Premises, citing several sections within article 4 of that agreement. Those sections provide as follows:

"4.1 Scope of Services

"4.1.1 The Construction Manager shall administer, manage, supervise, direct, coordinate and cause the proper and efficient performance and furnishing, through Subcontractors or its own forces, of all work, labor, materials, equipment, tools and General Conditions Work required for the complete construction and/or installation of the Project"

(*id.* at 15),

"4.11 Performance of Work; Correcting Defective Work

"4.11.1 [Tishman] shall observe, monitor, oversee and supervise the Work so that it is performed in accordance with the requirements of the Contract Documents . . ."

(*id.* at 23).

The term "Work" as discussed in section 4.1 is a defined term. "Work" encompasses "all work and other Services required to be performed by [Tishman] under the Contract Documents, and includes all labor, materials, equipment and services to be provided by [Tishman] under the terms of this Agreement to complete the Project" (*id.*, Article 1, p. 11). Further, as noted above, the uncontroverted testimony establishes that Tishman's "Project" did not involve the demolition work on the third floor.

Tishman is not an owner, and contractually, it was not a general contractor for Limited's demolition work on the third floor of the Premises. Further, there is no evidence that Tishman was delegated supervision or control over that demolition. Therefore, it was not an agent of the Building Defendants with respect to that work (*see Nascimento,* 86 AD3d at 193).

Tishman has established, *prima facie*, that it is not a proper Labor Law defendant with respect to the subject accident, and plaintiff has failed to raise a question of fact as to this issue. Therefore, this Court grants Tishman summary judgment dismissing the Labor Law §§ 240 (1) and 241 (6) claims as against it (*see Butt*, 47 AD3d at 341), and denies plaintiff summary judgment in his favor on the same claims.

Turning to the substance of the section 240 (1) claim with respect to the remaining defendants, plaintiff's accident occurred when, while walking on raised floor tiling, a tile unexpectedly came loose, moved, and caused his foot to fall through the opening created by the shifted tile.

The facts presented here are similar to those found in *Romeo v Property Owner (USA) LLC*, 61 AD3d 491 (1st Dept 2009), a case relied upon by defendants in their motions. In *Romeo*, the plaintiff was walking on completed raised flooring when he stepped on a "floor tile that suddenly and unexpectedly dislodged, causing his right foot to fall through the two-foot-by-two-foot opening created by the missing tile and strike the concrete subfloor 18 inches below" (*id.* at 491). That court, in dismissing the section 240 (1) claim, held that "walking on the permanent floor did not involve an elevation-related hazard of the type contemplated by the statute and did not necessitate the provision of the type of safety devises set forth in the statute" (*id.* at 491). Defendants argue that, in light of *Romeo*, plaintiff's accident falls outside the scope of section 240 (1), and that claim should be dismissed.

In opposition and in support of his cross-motion for summary judgment, plaintiff argues that rationale set forth in *Romeo* cannot apply (and should not remove plaintiff's accident from the scope of section 240 [1]) because the subject floor was not a "permanent floor." Plaintiff argues that, because the floor was slated for demolition and a separate portion of the floor was

demolished prior to the accident, the once permanent floor became a temporary floor. Temporary flooring may fall within the ambit of protections provided for by section 240 (1) (*see e.g. Robertti v Powers Chang*, 227 AD2d 542, 542-543 [2d Dept 1996] [collapse of temporary floor, exposing a hole that plaintiff's leg fell through was within the scope of section 240 (1)]).

In reply, defendants argue that there is no evidence in the record that any demolition work had been done on or within several feet of the subject floor tile or that the tile had in any way been altered or undermined.

After reviewing the record, this Court agrees. The record does not establish the exact location of the accident. There is no testimony that the accident occurred adjacent to the demolished area or that the subject floor tile had been undermined or otherwise unsecured from its pedestals by Limited. Plaintiff's expert testimony that "screws that fastened the floor panels to the underlying support pedestals may have been removed" (Fuchs aff, ¶ 13) is speculative and insufficient to establish that the floor in the area of plaintiff's accident had been subject to any actual demolition work (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002] ["Where the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . the opinion should be given no probative force"]). While plaintiff's expert opines that removing tiles could cause the tile system to lose its lateral support (Fuchs aff, ¶ 13), there is no evidence that the subject tile shifted because it lost lateral support.

Further, plaintiff's argument that the subject raised floor became temporary because it was slated for demolition at a future time is unavailing as it is unsupported by any caselaw supporting this assertion. Moreover, accepting plaintiff's assertion would create an excessively overbroad definition of the term "temporary" as meaning any portion of a building slated for demolition at a later time.

Finally, plaintiff's argument that the Court should treat the subject floor as akin to a raised rebar lattice, which has been held to create an elevation related hazard, is unpersuasive given the accident location (*see Brown v 44th St. Dev., LLC,* 48 Misc 3d. 234, 236 [Sup Ct, NY County 2015], *affd* 137 AD3d 703 [1st Dept 2016] [holding that section 240 (1) applied where the plaintiff was required to walk on "a steel tightrope" of rebar because "there were no planks or anything else laid down to walk on"]). Specifically, the lattice of rebar, described in *Brown* as steel bars approximately 12 inches apart and five-eights of an inch wide with spaces "a foot or more wide in all directions" (*id.* at 237), is in no way analogous to the tile floor present here.

Given the foregoing, plaintiff's accident does not fall within the scope of Labor Law § 240 (1) (*Romeo,* 61 AD3d at 491). Therefore, the Court grants Limited and the Building Defendants summary judgment dismissing the section 240 (1) claims against them, and denies plaintiff summary judgment in his favor on the same claims.

### *The Labor Law § 241 (6) Claims (Motion Sequence Numbers 006, 007, 008 and Plaintiff's Cross-Motions)*

Limited, Tishman and the Building Defendants move for summary judgment dismissing the Labor Law § 241 (6) claims against them. Plaintiff cross-moves for summary judgment in his favor on the same claims.

As an initial matter, as discussed above, Tishman is not a statutory agent under the Labor Law. For the reasons discussed above, this Court also grants Tishman summary judgment dismissing the Labor Law § 241 (6) claim as against it (*Russin,* 54 NY2d at 318).

Labor Law § 241 (6) provides, in pertinent part, as follows:

> "All contractors and owners and their agents, . . . when constructing
> or demolishing buildings or doing any excavating in connection
> therewith, shall comply with the following requirements:
> * * *

(6)    All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; *see also Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY2d at 501–502).

To sustain a Labor Law § 241 (6) claim, it must be established that the defendant violated a specific, "concrete" implementing regulation of the Industrial Code, rather than a provision containing only generalized requirements for worker safety (*Ross*, 81 NY2d at 505). Such violation must be a proximate cause of the plaintiff's injuries (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017] ["a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident"]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]). "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York*, 88 AD3d 951, 953 [2d Dept 2011]).

Here, plaintiff sets forth claims predicated upon multiple violations of the Industrial Code.[2] Defendants move for summary judgment dismissing each claim. Except for 12 NYCRR 23-3.3 (c), plaintiff does not move for relief in his favor on those claims or contest their

---

[2] While the Building Defendants argue plaintiff failed to plead any violations of the Industrial Code in his complaint or bill of particulars, plaintiff served an amended bill of particulars several months in advance of the filing of summary judgment that included several alleged violations of Industrial Code provisions (*see* NYSCEF Doc. No. 201, p. 115-127). Accordingly, these claims are properly pleaded.

152279/2017 LEDONNE V 450 PARTNERS ET AL Motion No. 006 007 008                              **Page 19 of 33**

dismissal. These uncontested provisions are deemed abandoned (*see Kempisty v 246 Spring St.,*

*LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find

that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not

violated be deemed to abandon reliance on that particular Industrial Code section"]). Defendants

are entitled to summary judgment dismissing those parts of plaintiff's Labor Law § 241 (6) claim

predicated on the abandoned provisions.

### *Industrial Code 12 NYCRR 23-3.3 (c)*

As an initial matter, section 23-3.3 (c) is sufficiently specific to support a Labor Law

§ 241 (6) claim (*Cardenas v One State St., LLC*, 68 AD3d 436, 438 [1st Dept 2009]).

Section 23-3.3 governs demolition by hand. Subsection 3.3 (c) governs "Inspections"

and provides the following:

> "During hand demolition operations, continuing inspections shall
> be made by designated persons as the work progresses to detect
> any hazards to any person resulting from weakened or deteriorated
> floors or walls or from loosened material. Persons shall not be
> suffered or permitted to work where such hazards exist until
> protection has been provided by shoring, bracing or other effective
> means."

Here, Limited argues that it fulfilled its inspection obligations and, therefore, did not

violate this section. In support Limited refers to the testimony of its foreman, Moreno, who

testified "yes" when he was asked whether he "perform[ed] a full inspection of the third floor on

a daily basis when [he] was there" (Moreno tr at 50). He further testified "no" when asked if he

found "anything wrong with the flooring or the process of the flooring being removed" (*id.* at

51).

[* 20]

In opposition, plaintiff argues that Moreno's inspections did not involve hazard detection and, therefore, did not constitute an inspection as required by section 23-3.3 (c). In support, plaintiff relies on the following testimony:

> "Q. You mentioned earlier that you did I guess daily inspections when you arrived to the job site. What did those daily inspections, what did they entail generally?
>
> "A. Yes I am there every single day. . . . I just see what we are going to throw away at that point, what we can do first to make the job easier. Things like that"

(*id.* at 78).

Notably, the testimony relied on by both parties fails to establish, *prima facie*, whether Limited performed "inspections . . . to detect any hazard . . . resulting from weakened or deteriorated floors" created by the demolition (12 NYCRR 23-3.3 [c]). Specifically, Moreno was never asked if he performed this type of hazard inspection. Rather, he was only asked a general question about whether he performed a "full inspection" – with no clarification on what a "full inspection" entailed. Further, the testimony plaintiff relies on does not support a determination that Moreno never inspected for hazardous conditions, as the question Moreno was asked focused solely on "daily inspections when [he] arrived to the job site" (*id.* at 78) and did not clarify if that was his sole inspection for the day, or merely the type of inspection he performed at the beginning of the workday.

Moreno's testimony is insufficient to establish, as a matter of law, whether section 23-3.3 (c) was fulfilled or violated. Thus, Limited is not entitled to summary judgment dismissing the Labor Law § 241 (6) claim predicated on a violation of Industrial Code 23-3.3 (c), and plaintiff is not entitled to summary judgment in his favor on the same claim.

As to the Building Defendants, plaintiff argues they did not perform any inspections. They rely on Lillis's testimony that Brookfield did not have "any type of employees . . . that would perform inspections [of Limited's work] on any type of regular basis" (*id.* at 57) and that Brookfield did not employ anyone who would "inspect or evaluate the quality of Limited's work" on a regular basis (*id.* at 58). This testimony establishes that Brookfield did not perform "continuing inspections" of the demolition work as required by section 23-3.3 (c).

In opposition, the Building Defendants fail to raise a question of fact as to this issue. That said, there are questions of fact regarding the proximate cause of the accident (*Yaucan*, 155 AD3d at 926; *Sutherland*, 207 AD3d at 161). Specifically, the proffered expert affidavits of the parties assert two dueling theories of plaintiff's accident – one of which would implicate this Industrial Code provision (instability created by demolition work), and one which would not (a preexisting defect in the raised tiling) (*Ellerbe v Port Auth. of N.Y. & N.J.*, 91 AD3d 441, 442 [1st Dept 2012] ["Where credible evidence reveals differing versions of the accident, one under which defendants would be liable [under the Labor Law] and another under which they would not, questions of fact exist making summary judgment inappropriate"]). Further, the resolution of differing expert opinions is a credibility determination best left to a jury to resolve (*see Vosper v Fives 160th, LLC*, 110 AD3d 544, 545 [1st Dept 2013] ["Defendant's expert's disagreement with plaintiff's expert's findings or methodology presents issues of fact and credibility for a jury to resolve"]).

Thus, this Court denies both the Building Defendants' motion and plaintiff's cross-motion for summary judgment on this claim.

[* 22]

***The Common-Law Negligence and Labor Law § 200 Claims***
***(Motion Sequence Number 006, 007, 008)***

Limited, Tishman, and the Building Defendants each move for summary judgment

dismissing the common-law negligence and Labor Law § 200 claims against them. Labor Law

§ 200 is a "codification of the common-law duty imposed upon an owner or general contractor to

provide construction site workers with a safe place to work" (*Cruz v Toscano*, 269 AD2d 122,

122 [1st Dept 2000] [citation omitted]). Labor Law § 200 (1) states, in pertinent part, as follows:

> "All places to which this chapter applies shall be so constructed,
> equipped, arranged, operated and conducted as to provide
> reasonable and adequate protection to the lives, health and safety of
> all persons employed therein or lawfully frequenting such places.
> All machinery, equipment, and devices in such places shall be so
> placed, operated, guarded, and lighted as to provide reasonable and
> adequate protection to all such persons."

There are two distinct standards applicable to section 200 cases, depending on the kind of

situation involved: (1) when the accident is the result of the means and methods used by a

contractor to do its work, and (2) when the accident is the result of a dangerous condition that is

inherent in the premises (*see Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-144

[1st Dept 2012] ["Claims for personal injury under [section 200] and the common law fall into

two broad categories: those arising from an alleged defect or dangerous condition existing on the

premises and those arising from the manner in which the work was performed"]).

Here, plaintiff was injured when a tile unexpectedly shifted and/or moved, causing his

foot to fall through the opening created by the shifted floor tile. As noted above, there are

questions of fact that remain regarding what caused the accident. With respect to section 200

liability, plaintiff's accident may have arisen from either a dangerous condition inherent in the

Premises (a preexisting defect in the raised tiling) or from the means and methods of the work

(the failure to properly brace, support and inspect the remaining tiles while the demolition work

[* 23]

was ongoing). Reflecting these differing positions, plaintiff and defendants provide dueling expert affidavits regarding the cause of the accident (Fuchs Aff; NYSCEF Doc. No. 221; Danatzko aff; NYSCEF Doc. No. 204). As discussed above, the resolution of differing expert opinions is a matter for a jury (*see Vosper*, 110 AD3d at 545).

That said, if a defendant cannot be found liable under both the hazardous condition and means and methods analyses, it would be entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against it. Therefore, this Court must address both analyses.

### *Means and Methods*

Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless "it actually exercised supervisory control over the injury-producing work" (*Jackson v Hunter Roberts Constr., L.L.C.*, 205 AD3d 542, 543 [1st Dept 2022] [internal quotation marks and citation omitted]; *Naughton v City of New York*, 94 AD3d 1, 11 [1st Dept 2012] ["liability can only be imposed against a party who exercises *actual* supervision of the injury-producing work"]). "General supervisory authority is insufficient to constitute supervisory control" (*Hughes v Tishman Constr. Corp.*, 40 AD3d 305, 306 [1st Dept 2007]).

Here, the record is devoid of any evidence that Tishman or the Building Defendants actually directed and supervised Limited's work. Plaintiff provides no evidence that Tishman interacted with, supervised or controlled Limited at all. Plaintiff's argument that Tishman, as the entity that hired Cosentini (plaintiff's employer), had the authority to supervise and control plaintiff is unavailing. Plaintiff's work was not the injury producing work (*see Jackson*, 205 AD3d at 543).

As to the Building Defendants, the record establishes that they directed Limited's work insofar as they provided Limited its scope of work and coordinated when it was to perform its work (informing Limited as to when it could demolish certain areas). However, they did not provide actual supervision or control over Limited's demolition work (and any shoring work that may have been necessary). Accordingly, the Building Defendants' general direction over the scope and coordination of Limited's work only establish a general supervisory control over Limited's work. General supervisory authority is insufficient to impute liability under section 200 (*see Bisram v Long Is. Jewish Hosp.*, 116 AD3d 475, 476 [1st Dept 2014]; *Hughes*, 40 AD3d at 306).

As to Limited, it only argues it did not have the authority to control plaintiff's work, but, as noted above, plaintiff's work was not the injury producing work. To the extent the accident may have been caused due to instability created from the demolition of the surrounding raised tiles, the record establishes that Limited was the entity that performed that work. Further, testimony shows that Limited was also responsible for inspecting its own work. Accordingly, should it be determined that the accident was caused due to the demolition of the surrounding floor tiles, it cannot be said that Limited did not have actual supervision or control over the subject injury producing work. Therefore, Limited has not established its entitlement to dismissal of the common-law negligence and Labor Law § 200 claims under a means and methods analysis.

Therefore, Tishman and the Building Defendants would be entitled to summary judgment dismissing these claims under a means and methods analysis, while Limited would not be entitled to dismissal of the same.

*Hazardous Condition*

Where "a plaintiff's injuries stem not from the manner in which the work was being performed, but, rather, from a dangerous condition on the premises, a general contractor may be liable in common-law negligence and under Labor Law § 200 if it has control over the work site and actual or constructive notice of the dangerous condition" (*Keating v Nanuet Bd. of Educ.*, 40 AD3d 706, 708 [2d Dept 2007]; *Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011]).

Here, as discussed above, Tishman did not have control over the work done on the third floor of the Premises. Specifically, it was not contractually delegated control over the work site (or the work performed) where the accident occurred, and the record establishes that it did not have any knowledge of a hazard, or a duty to inspect any of Limited's work. Therefore, it cannot be liable for plaintiff's accident under the hazardous condition analysis (*Keating*, 40 AD3d at 708). Accordingly, Tishman would be entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims under this theory.

The Building Defendants, as the owner/manager of the Premises, had overall control over the Premises, including the work site. Limited, as the entity hired to perform the work at the work site, also had control over that work site. Accordingly, it must be determined whether the Building Defendants and Limited had actual or constructive notice of a hazardous condition – namely loose tiles – in the accident area.

While there is no evidence of actual knowledge of any hazardous/defective tiles in the subject area, there remain questions of fact as to whether the Building Defendants or Limited had constructive notice of a loose tile hazard at the accident location.

> "A defendant has constructive notice of a defect when it is visible and apparent, and has existed for a sufficient length of time before

[* 26]

the accident such that it could have been discovered and corrected .
. . . When a defect is latent and would not be discoverable upon a
reasonable inspection, constructive notice may not be imputed"

(*Carrillo v Circle Manor Apts.*, 131 AD3d 662, 664 [2d Dept 2015] [internal citations and

quotation marks omitted]).

To establish a lack of constructive notice of a hazardous condition, a party must establish,

*inter alia*, that it inspected the accident location and when it last did so. Failing to do so raises

triable issues of fact (*see Pereira v New Sch.*, 148 AD3d 410, 412-13 [1st Dept 2017] [the

defendants failed to establish lack of constructive notice of a dangerous condition "since they

submitted no evidence of . . . when the site had last been inspected before the accident"], *citing*

*Ladignon v Lower Manhattan Dev. Corp.*, 128 AD3d 534, 535 [1st Dept 2015] ["There are

triable issues as to constructive notice of the defective condition of the staircase since the record

is unclear as to when the staircase was last inspected prior to plaintiff's fall"]).

Here, neither the Building Defendants or Limited establish when they last inspected the

area where the accident occurred, nor do they present sufficient evidence that the defect was

latent, such that the defect would not have been discovered by an inspection. The dueling expert

testimony on the nature of the defect – how it came to be, whether it would have been identified

by an inspection, and how it caused the accident – underscore the questions of fact that remain

under the hazardous condition analysis. Accordingly, the Building Defendants and Limited have

not established their *prima facie* entitlement to summary judgment dismissing the common-law

negligence and Labor Law § 200 claims against them under the hazardous condition analysis.

In light of the foregoing, under either theory of the accident, Tishman has established it is

entitled to summary judgment dismissing the common-law negligence and Labor Law § 200

claims as against it. The Building Defendants and Limited, however, may still be liable under at

least one theory of the accident. Accordingly, they are not entitled to summary judgment dismissing the same claims as against them.

**Building Defendants' Cross-claims for Contractual Indemnification (Motion Sequence Numbers 006 and 008)**

Building Defendants move for summary judgment in their favor on their crossclaim for contractual indemnification against Limited. Limited moves for summary judgment dismissing the same crossclaim.

*Additional Facts Relevant to This Issue*

450 Partners and Limited entered into the Purchase Order, dated November 22, 2013, for the work related to the Limited Project (Building Defendants' notice of motion, exhibit M; NYSCEF Doc. No. 186). The Purchase Order identifies Limited as the "Seller" and 450 West 33rd Street as the "Buyer." It contains an "Seller's Indemnity" provision that provides the following, as relevant:

> "To the extent permitted by Laws, [Limited] will indemnify and
> hold Buyer and Buyer's affiliates, agents . . . (an "Indemnitee"
> harmless from, and at Buyer's option, defend any claim . . .
> incurred by any Indemnitee arising out of or related to: (i)
> [Limited's] performance of this order (except to the extent the
> same is caused by the gross negligence or willful misconduct of
> Buyer or its employees, agents or contractors), (ii) the negligence
> or willful misconduct of [Limited] or its agents . . . ."

(*id.*, ⁋ 8).

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). "In contractual indemnification, the one seeking indemnity need only establish

[* 28]

that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Correia v Professional Data Mgt.*, 259 AD2d 60, 65 [1st Dept 1999]; *see also Lexington Ins. Co. v Kiska Dev. Group LLC*, 182 AD3d 462, 464 [1st Dept 2020][denying summary judgment where indemnitee "has not established that it was free from negligence"]). Further, unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia*, 259 AD2d at 65).

As an initial matter, as noted above, there remain questions of fact as to whether the accident "arose out of or related to" Limited's work (or whether the cause of the accident was a latent defect in the subject tile). Further, as discussed above, even if the accident arose from Limited's work, there remain questions of fact regarding whether Building Defendants were negligent in failing to inspect the subject accident area. Therefore, Building Defendants are not entitled to summary judgment in their favor on this claim.

Turning to Limited's motion, Limited first argues that the indemnification provision violates General Obligations Law (GOL) § 5-322.1 (*see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 786, 795 [1997] [a clause in a construction contract which purports to indemnify a party for its own negligence is void under GOL § 5-322.1]). However, the indemnification provision contains language that limited indemnification "[t]o the extent permitted by Laws" (Purchase Order; NYSCEF Doc. No. 186). Therefore, the indemnification provision does not violate GOL § 5-322.1 (*see e.g. Brooks v Judlau Contr., Inc.*, 11 NY3d 204, 210 [2008]).

Next, Limited argues the accident did not arise from Limited's work and, therefore, the indemnification provision cannot be invoked. This argument is unpersuasive as questions of fact

[* 29]

remain regarding whether the subject tile was undermined, loosened or otherwise damaged by Limited's work.  Accordingly, Limited is not entitled to summary judgment dismissing Building Defendants' contractual indemnification claims against it.

**Building Defendants' Cross-claims for Common-Law Indemnification and Contribution (Motion Sequence Numbers 006 and 008)**

Building Defendants move for summary judgment in their favor on their cross-claim for common-law indemnification and contribution against Limited.  Limited moves for summary judgment dismissing the same claims.

"To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident'" (*Perri v Gilbert Johnson Enters., Ltd.,* 14 AD3d 681, 684-685 [2d Dept 2005], quoting *Correia,* 259 AD2d at 65). "Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 61 [2d Dept 2003] [internal quotation marks and citations omitted]).

Here, as discussed above, questions of fact remain as to whether Limited and/or Building Defendants may have been negligent with respect to plaintiff's accident. Accordingly, neither Building Defendants nor Limited are entitled to summary judgment on the common-law indemnification and contribution claims against Limited.

***Building Defendants' Claim for Breach of Contract for the Failure to Procure Insurance as against Limited (Motion Sequence Numbers 006 and 008)***

Building Defendants move for summary judgment in their favor on their claims for breach of contract for the failure to procure insurance as against Limited. Limited moves for summary judgment dismissing the same claim.

Notably, Building Defendants do not address this claim in their brief. Accordingly, they have failed to establish a *prima facie* entitlement to judgment in their favor. Limited failed to annex a copy of its insurance policy to its motion papers and, therefore, has not established that it procured the required insurance (*see Castillo v Port Auth. of N.Y. & N.J.*, 159 AD3d 792, 797 [2d Dept 2018] [movants failed to establish entitlement to judgment on the failure to procure claim "as neither of them submitted any evidence demonstrating that they procured an insurance policy as required by their respective contracts"]).

The parties' remaining arguments have been considered and were determined to be unavailing. Neither party is entitled to summary judgment on this claim.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that motion of defendant Limited Interiors Group (Limited) (motion sequence number 006), pursuant to CPLR 3212, for summary judgment dismissing the complaint, as well as all cross-claims against it is granted to the extent that the Labor Law §§ 240 and 241 (6) claims are dismissed, except for that portion of the section 241 (6) claim predicated upon a violation of 12 NYCRR 23-3.3 (c), and the remainder of the motion is denied; and it is further

[* 31]

31 of 33

**ORDERED** that the motion of defendant Tishman Construction Corp. (Tishman) (motion sequence number 007), pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it is granted, and the complaint against it is dismissed with costs and disbursements as taxed by the Clerk of the Court upon the submission of an appropriate bill of costs; and the Clerk of the Court is directed to enter judgment accordingly; and it is further

**ORDERED** that the motion of defendants 450 Partners LLC , Brookfield Properties Developer LLC, Brookfield Financial Properties LP, Brookfield Properties W 33rd GP LLC, Brookfield Properties W 33rd Holdings LLC and Brookfield Properties W 33rd CO., L.P. (collectively the Building Defendants) (motion sequence number 008), pursuant to CPLR 3212, for summary judgment dismissing the complaint as against them, and for summary judgment in their favor on their on their cross-claims against Limited is granted to the extent that the Labor Law §§ 240 and 241 (6) claims are dismissed, except for that portion of the section 241 (6) claim predicated upon a violation of 12 NYCRR 23-3.3 (c), and the remainder of the motion is denied; and it is further

**ORDERED** that plaintiff Robert Ledonne's cross-motion (in relation to motion sequence number 006), pursuant to CPLR 3212, for summary judgment in his favor on his Labor Law §§ 240 (1) and 241 (6) claims against Limited is denied; and it is further

**ORDERED** that plaintiff Robert Ledonne's cross-motion (in relation to motion sequence number 007), pursuant to CPLR 3212, for summary judgment in his favor on his Labor Law §§ 240 (1) and 241 (6) claims against Tishman is denied; and it is further

**ORDERED** that plaintiff Robert Ledonne's cross-motion (in relation to motion sequence number 008), pursuant to CPLR 3212, for summary judgment in his favor on his Labor Law §§ 240 (1) and 241 (6) claims against Building Defendants is denied; and it is further

**ORDERED** that the remainder of this action will continue.

This constitutes the decision and order of the Court.

| 4/18/2024 | | |
|-----------|--|--|
| **DATE** | | **ALEXANDER M. TISCH, J.S.C.** |

CHECK ONE: ☐ CASE DISPOSED ☒ NON-FINAL DISPOSITION

☐ GRANTED ☐ DENIED ☒ GRANTED IN PART ☐ OTHER

APPLICATION: ☐ SETTLE ORDER ☐ SUBMIT ORDER

CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE